OPINION. Keen, Judge: The principal question in issue is whether petitioner’s profits on the sale of the residential properties which he had purchased and held for rent for more than 6 months are taxable as long-term capital gains, as reported by petitioner in his returns, or as ordinary income as determined by respondent. As an alternative issue, respondent contends that if the profits from the sale of the houses in question constituted long-term capital gains, no depreciation deductions on the houses are allowable because in each instance the resale or salvage value of the house exceeded its depreciated cost to petitioner. Two minor issues involving depreciation on automobiles and dividend income have been settled by agreement between the parties, which will be given effect under Bule 50 settlement. Under section 117 (]') of the Internal Bevenue Code of 1939 (applicable in 1953) and section 1231 of the 1954 Code (applicable in 1954 and 1955), gains from the sale of capital assets used in trade or business ,and held for 6 months or longer are treated as long-term capital gains, excluding, however, gains from the sale of assets held primarily for sale to customers in the ordinary course of the taxpayer’s trade or business. The question presented, therefore, is whether the properties in question were held by petitioner primarily for sale to customers in the regular course of business. This question in similar form has been before the courts in a large number of cases from which no rule of law of general application has evolved. We have said that each case must turn on its own particular facts. See Nelson A. Farry, 13 T.C. 8; Walter R. Crabtree, 20 T.C. 841; D. G. Bradley, 26 T.C. 970. On the facts here there can be little question but that petitioner purchased and held the 40-odd houses in the Great Forest and Bel Air subdivisions for investment and rental purposes, as we have found above. The fact that he rented most of them for periods of 2 years or more; that he decided to go out of the rental business only after changes in real estate conditions made it mi profitable; that he purchased no more houses for rent after that time; that he offered none of his houses for sale as long as he could rent them satisfactorily; and that the sale of the rental houses extended over a period of several years, as tenant occupancies failed, all tend to support petitioner’s contentions that he acquired and held the houses for rental purposes and not for resale. The record contains little evidence in support of the contrary view. The gains on the sales of the properties that wTere held for 6 months or more were properly reported, we think, as long-term capital gains. It is true, as respondent contends, that petitioner’s corporations were also in the business of building and selling houses. But even disregarding these corporate entities would not change the result. This Court has repeatedly recognized the dual roles of taxpayers in comparable situations. In Nelson A. Farry, supra, we held that the taxpayer was engaged both in the business of buying and selling houses and in the business of investing in houses for rent. See also Walter B. Crabtree, supra; D. L. Phillips, 24 T.C. 435. We have found as a fact on the evidence before us that petitioner as an individual was engaged in the business of buying, owning, and renting residential houses during the years under review, and was not engaged in the business of selling those houses. It follows that the houses which petitioner sold during the taxable years were not held primarily for sale to customers in the regular course of business. This disposition of the capital gains issue brings into controversy respondent’s alternative contention that the depreciation deductions taken on the rental houses, while held for rent by petitioner, are unallowable. In computing the depreciation deductions in question, petitioner used a straight line method based on an estimated useful life of 25 years. This estimate is not challenged by respondent. No consideration was given to the salvage value of the houses. Respondent determined in his notice of deficiency that since the salvage values were in excess of petitioner’s depreciated costs,[1] no depreciation is allowed. The Code sections involved are section 23(1) of the 1939 Code and section 167 of the 1954 Code. These sections provide for depreciation deductions of a reasonable amount for the exhaustion and wear and tear of property used in trade or business. Section 167(b) of the 1954 Code provides that for the taxable years beginning after December 31, 1953, “the term ‘reasonable allowance’ * * * shall include (but shall not be limited to) an allowance computed in accordance with regulations prescribed by the Secretary or his delegate * * The pertinent sections of the Commissioner’s regulations are quoted in the margin.[2] During each of the taxable years petitioner sold houses theretofore held by him for rent at prices in excess of their undepreciated costs as of the first of such years. Thus it was apparent with regard to each house thus sold and a condition “known to exist at the end of the period for which the return is made” that its salvage value during the year of sale was in excess of its undepreciated cost as of that year. Accordingly, no depreciation deduction is allowable on account of a home thus sold for the taxable year during which it was sold. Cohn v. United States, 259 F. 2d 371. However, the situation with regard to other years is different. Petitioner’s rental houses did not constitute a “type of asset, where the experience of the taxpayers clearly indicates a utilization of the asset for a substantially shorter period than its full economic life,” such as involved in the cases of Massey Motors v. United States and Commissioner v. Evans, 364 U.S. 92, 96, 97. We construe the facts as indicating that petitioner did not know how long his rental houses would be of profitable use to him or how long they might “be utilized until no longer capable of functioning,” and therefore the depreciation base should be “recognized as to the number of years the asset is expected to function profitably in use,” See Massey Motors v. United States, supra at 96. Accordingly, we decide that the respondent erred in disallowing the depreciation deductions here involved with the exception of the depreciation for each of the taxable years upon houses actually sold within such year at a price in excess of petitioner’s depreciated cost as of the first of such year. Decision will be entered under Buie 50. We interpret this to mean the salvage value at the end of each of the taxable years and not the salvage value as of the end of the useful life of the houses. Income Tax Regs. Sec. 1.167(a)-l Depreciation in General. — {n't Reasonable allowance. Section 167(a) provides that a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business or of property held by the taxpayer for the production of Income shall be allowed as a depreciation deduction. The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property as provided in section 567(f) and § 1.167(f) — 1, An asset shall not be depreciated below a reasonable salvage value under any method of computing depreciation. See paragraph (c) of this section for definition of salvage. * * * Sec. 1.167(b) — 0 Methods op Computing Depreciation.— (a) In general. Any reasonable and consistently applied method of computing depreciation may be used or continued in use under section 167. Regardless of the method used in computing depreciation, deductions for depreciation shall not exceed such amounts as may be necessary to recover the unrecovered cost or other basis less salvage during the remaining useful life of the property. The reasonableness of any claim for depreciation shall be determined upon the basis of conditions known to exist at the end of the period for which the return is made. • • •