THOMAS LEE HESSELINK, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 31528-88.          Filed July 30, 1991.

Thomas Lee Hesselink, pro se.
*Donna C. Hansberry,* for the respondent.

OPINION

SWIFT, *Judge:** Respondent determined additions to petitioner's Federal income taxes with respect to 1980 through 1983, as follows:

|  | Additions to tax | | | |
|---|---|---|---|---|
| Year | Sec. 6653(a)[1] | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661 |
| 1980 | $804 | - - - | - - - | - - - |
| 1981 | - - - | $528 | ** | - - - |
| 1982 | - - - | 783 | ** | $3,904 |
| 1983 | - - - | 582 | ** | 2,909 |

**50 percent of the interest due on the portion of the underpayment attributable to negligence.

*By order of the Chief Judge, this case was reassigned to Judge Stephen J. Swift for disposition.

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue.

After concessions, the only issue for decision is petitioner's liability for the additions to tax under section 6661 with respect to 1982 and 1983.

The relevant facts were fully stipulated and are so found. Petitioner, a medical physician, resided in Hanover Park, Illinois, at the time he filed his petition in this case.

With respect to each of the years 1980, 1981, 1982, and 1983, petitioner did not file timely Federal income tax returns, petitioner did not have any Federal income taxes withheld from his income, and petitioner did not make any estimated tax payments. After a criminal investigation by respondent, on April 2, 1985, petitioner was indicted by a Federal grand jury for willfully failing to file Federal income tax returns for 1980 through 1983, in violation of section 7203. After trial, on July 26, 1985, petitioner pled guilty to each of the charges.

Pursuant to petitioner's guilty plea and conviction, on September 27, 1985, petitioner was sentenced by the U.S. District Court for the Northern District of Illinois to 1 year in prison, and petitioner was ordered to file Federal income tax returns for 1980 through 1983, and to perform 1,000 hours of community service.

In compliance with the order of the Federal District Court that petitioner file tax returns, in September of 1985 petitioner filed Federal income tax returns for 1980 through 1983, showing taxes due and owing of $16,079, $10,579, $15,617, and $11,636, respectively.

Petitioner appealed his conviction for violation of section 7203, and on April 3, 1986, the U.S. Court of Appeals for the Seventh Circuit affirmed petitioner's conviction in an unpublished order.

On March 3, 1987, petitioner paid the taxes reported due on his late-filed 1982 and 1983 Federal income tax returns. On September 6, 1988, respondent, among other additions to tax, determined that petitioner was liable for additions to tax under section 6661 with respect to 1982 and 1983.[2]

The amount of section 6661 additions to tax, assessed after October 21, 1986, is equal to 25 percent of the amount

[2]Sec. 6661 was added to the Code by sec. 323(a) of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, 613, effective with respect to tax returns due after 1982.

of any underpayments attributable to substantial understatements. Section 8002 of the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1874, 1951; see *Pallottini v. Commissioner*, 90 T.C. 498, 501-502 (1988).

In respondent's September 6, 1988, notices of deficiency to petitioner for 1982 and 1983, respondent did not, and respondent does not now, dispute the amount of Federal income tax liability shown on petitioner's 1982 and 1983 tax returns as they were filed late by petitioner in September of 1985.

Petitioner, generally, interprets the addition to tax for a substantial understatement under section 6661[3] as applying only where taxpayers show substantial understatements on tax returns actually filed and regardless of when the taxpayers filed the tax returns. Petitioner therefore concludes that since his Federal income tax liabilities were correctly shown on his 1982 and 1983 tax returns filed in September of 1985, he is not subject to the section 6661 additions to tax.

Respondent argues that a taxpayer's failure to file a return for a particular year constitutes a statement of zero tax liability that can trigger the section 6661 substantial understatement addition to tax if the taxpayer in fact has a tax liability. Respondent also argues that tax liabilities shown on amended returns or on delinquent returns filed after respondent has contacted the taxpayer are to be disregarded in determining whether taxpayers made substantial understatements for a particular year.

Respondent's interpretation of section 6661 is expressly supported by Treasury regulations. Section 1.6661-2(d)(2), Income Tax Regs., provides in pertinent part, as follows:

---

[3]SEC. 6661. SUBSTANTIAL UNDERSTATEMENT OF LIABILITY.

SEC. 6661(a). ADDITION TO TAX.—If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to * * * [25] percent of the amount of any underpayment attributable to such understatement.

(b) DEFINITION AND SPECIAL RULE.—

\* \* \* \* \* \* \*

(2) UNDERSTATEMENT.—

(A) IN GENERAL.—For purposes of paragraph (1), the term "Understatement" means the excess of—

(i) the amount of the tax required to be shown on the return for the taxable year, over

(ii) the amount of the tax imposed which is shown on the return.

*Tax shown on return.* For purposes of section 6661, the amount of tax shown on the return for the taxable year is determined * * * without regard to any amount of additional tax shown on a return (including an amended return, so-called) filed after the taxpayer is first contacted by [respondent] concerning the tax liability of the taxpayer for the taxable year. * * * If no return was filed for the taxable year or if the return * * * shows no tax due, the amount of tax shown on the return is considered to be zero. * * *

Respondent's interpretation of section 6661 (and the validity of the above regulation) is also supported by numerous opinions of this Court in which we have upheld the imposition of additions to tax under section 6661 where taxpayers have filed no tax returns, and where taxpayers have filed amended or late tax returns only after first being contacted by respondent. See *Estate of McClanahan v. Commissioner,* 95 T.C. 98 (1990); *Woods v. Commissioner,* 91 T.C. 88 (1988) (Court reviewed); *Eckel v. Commissioner,* ____ F.2d ____ (10th Cir. 1991), affg. T.C. Memo. 1990-174; *Wallmeyer v. Commissioner,* T.C. Memo 1990-166; *Egner v. Commissioner,* T.C. Memo. 1989-247, affd. without published opinion ____ F.2d ____ (10th Cir. 1991); *Fulks v. Commissioner,* T.C. Memo. 1989-190; *Guthrie v. Commissioner,* T.C. Memo. 1989-168; *Mosher v. Commissioner,* T.C. Memo. 1989-157, affd. without published opinion 927 F.2d 599 (5th Cir. 1991); *Schroeder v. Commissioner,* T.C. Memo. 1989-110; *Garcia v. Commissioner,* T.C. Memo. 1989-106.

In our published opinion in *Estate of McClanahan v. Commissioner, supra* at 103-104, involving facts very similar to those before us in the instant case, we commented at some length concerning the validity of the applicable portion of the regulations under section 6661 as follows:

Section 6661 was enacted in 1982 to, inter alia, enhance taxpayer compliance and deter taxpayer participation in the "audit lottery" whereby taxpayers take questionable positions on their tax returns in the hope that they will not be audited. S. Rept. 97-494, at 272 (1982). Petitioners assert that section 6661 was intended to apply to "wrong positions taken on filed returns that create substantial tax deficiencies" and not to "late-filed" returns. We do not agree with petitioners' position.

The compliance purpose of section 6661 is to provide an incentive against taking highly questionable positions which go undetected through either failure to file or failure to provide adequate disclosure on a filed return. In our opinion, a taxpayer who fails to timely file a return until

after he is contacted by [respondent] is as much a participant in the audit lottery as a taxpayer who submits a timely return containing highly questionable positions.

Our reading of section 6661 and its legislative history convinces us that imposing section 6661 additions to tax against petitioners is not beyond the scope of the statute. Prior to being contacted by the special agent, petitioners had not filed tax returns for the years [in issue]. Consequently, prior to contact, the amount of tax shown on the returns is zero. Sec. 1.6661-2(d)(2), Income Tax Regs. The amount of tax shown on the returns filed subsequent to contact by [respondent] is therefore "additional" to the zero amount prior to contact and is plainly within the intendment of section 1.6661-2(d)(2), Income Tax Regs. Accordingly, we hold that section 6661 is applicable where a delinquent return is filed after the taxpayer is first contacted by a representative of [respondent].

In our Court-reviewed opinion in *Woods v. Commissioner,* *supra* at 95 n.11, we stated that the above "regulation is not plainly inconsistent with the statute."

More recently, in affirming on this issue our opinion in *Mosher v. Commissioner, supra,* the U.S. Court of Appeals for the Fifth Circuit applied the above regulations to a "no return" situation and expressly relied on the regulations under section 6661, as follows:

If no valid return is filed for a given taxable year, the amount of tax considered to be shown on that return is zero. 26 C.F.R. 1.6661-2(d)(2). As a result * * * —that is [the taxpayer's] failure to file a valid return in 1982—we agree with the [Tax] court's conclusion that [respondent] correctly assessed further additions to tax for substantial understatement. [*Mosher v. Commissioner, supra,* slip op. at 9.[4]]

We note that the section 6661 substantial understatement addition to tax (and with it the issue in this case) has become obsolete with respect to tax returns due after 1989. See new secs. 6662(a), 6662(b)(2), and 6664(b), as enacted by the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721, 103 Stat. 2106, 2395, 2398.

---

[4]With regard to unpublished opinions of the Fifth Circuit, rule 47.5.3, Fed. Local Ct. Rules, 5th Cir., provides as follows:

47.5.3 Unpublished Opinions. Unpublished opinions are precedent. However, because every opinion believed to have precedential value is published, an unpublished opinion should normally be cited only when it (1) establishes the law of the case, (2) is relied upon as a basis for res judicata or collateral estoppel, or (3) involves related facts. If an unpublished opinion is cited, a copy shall be attached to each copy of the brief.

By order entered this date, the Clerk of the Tax Court is directed to serve the parties with a copy of the unpublished opinion of the Court of Appeals for the Fifth Circuit in *Mosher v. Commissioner,* 927 F.2d 599 (5th Cir. 1991), affg. T.C. Memo. 1989-157.

In light of the numerous and consistent court opinions interpreting and/or applying the addition to tax under section 6661 to situations in which taxpayers filed either no returns, or amended, or late returns after first being contacted by respondent, as well as the obsolescence of this issue to returns filed after 1989, we believe application of the well-established principle of stare decisis is particularly apropos to our resolution of this issue in the instant case. With regard to this principle, the Supreme Court recently stated—

Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. * * * [*Payne v. Tennessee*, 501 U.S. _____ (June 27, 1991) (slip op. at 34).]

and—

the important doctrine of *stare decisis* [is] the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. * * * While *stare decisis* is not an inexorable command, the careful observer will discern that any detours from the straight path of *stare decisis* in our past have occurred for articulable reasons, and only when the Court has felt obliged "to bring its opinions into agreement with experience and with facts newly ascertained." *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 412 (1932) (Brandeis, J., dissenting).

Our history does not impose any rigid formula to constrain the Court in the disposition of cases. Rather, its lesson is that every successful proponent of overruling precedent has borne the heavy burden of persuading the Court that * * * the values served by *stare decisis* yield in favor of a greater objective. * * *

[*Vasquez v. Hillery*, 474 U.S. 254, 265-266 (1986). Emphasis in the original.]

This Court has explained the principle of stare decisis as follows:

the doctrine of stare decisis, which arose from a necessity to preserve the harmony and stability of the law, requires adherence by courts to a *principle of law* settled by a series of decisions. 21 C.J.S., Courts, secs. 187, 188; 10 Mertens, Law of Federal Income Taxation, sec. 60.21 (1964 rev.). * * * [*Jefferson v. Commissioner*, 50 T.C. 963, 967 (1968). Emphasis in the original.]

Also, various Federal Courts of Appeal, in addressing Federal tax issues and appeals from this Court, have

recognized the viability of the principle of stare decisis. In affirming this Court, the U.S. Court of Appeals for the District of Columbia Circuit made the following statement that is pertinent to our consideration of the principle of stare decisis in the instant case:

This principle assumes increased importance when the antecedent case involves construction of a statute. See 1B *Moore's Federal Practice,* par. 0.402[5] * * * This principle encourages uniformity in the application of legal standards, enhances predictability in decision making, promotes the interests of judicial efficiency and economy, and evinces respect for the efforts of earlier courts that have struggled to educe the appropriate legal norms. [*Brewster v. Commissioner,* 607 F.2d 1369, 1373-1374 (D.C. Cir. 1979), affg. on the relevant issue 67 T.C. 352 (1976).]

In *Cottrell v. Commissioner,* 628 F.2d 1127, 1131 (8th Cir. 1980), revg. on a disclaimer issue under section 2511, 72 T.C. 489 (1979), the Eighth Circuit explained further the particular applicability of *stare decisis* to questions of statutory interpretation, as follows:

The doctrine of *stare decisis,* weighty in any context, is especially so in matters of statutory construction. For in such cases Congress may cure any error made by the courts. Until it does, the bar and the public are justified in expecting the courts, except in the most egregious cases, neither to depart from previous interpretations of statutes, nor to give them a grudging application. * * * [Emphasis in the original; fn. ref. omitted.]

We believe that the principle of stare decisis should be adhered to in resolving the question of statutory interpretation before us in this case.

Further, and apart from stare decisis, we disagree with petitioner's interpretation of the language of section 6661, and we continue to believe that the regulations under 6661 are a reasonable interpretation of the statutory intent. The language of section 6661 is silent and, in our opinion, obviously unclear and lacking in guidance as to how the section 6661 addition to tax is to apply to "no-return," to "amended return," and to "late-return" situations. The relevant statutory language nowhere contains the words "filed," "amended," or "late return." The operative verb in section 6661(2)(A)(ii) is "shown." Where a taxpayer does not file a tax return for a year, the taxpayer has not "shown" a tax on any return.

Further, where a taxpayer files an amended or a late tax return after being contacted by respondent with regard to his or her tax liability for a year, the regulations reasonably treat the taxpayer as not having "shown" a tax liability on the return, since it was respondent's contact, not the taxpayer's voluntary act, that may be presumed to have precipitated the filing of the amended or late return and that indirectly caused a tax liability to be "shown" on the return.

Treasury regulations enjoy a presumption of validity, and they are to be sustained unless "unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948). We believe the regulations under section 6661 that are at issue in this case are reasonable.

We note further that when Congress in 1989 enacted revisions to the various additions-to-tax provisions of the Code, the statutory language utilized for the new accuracy-related additions to tax expressly limited their application to situations where a tax return has been filed. See sec. 6664(b). Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721, 103 Stat. 2106, 2395. In doing so, Congress expressly acknowledged that the language of section 6661 that is in issue in this case was unclear, as follows:

> the bill provides that an accuracy-related or fraud penalty is to be imposed only if a return has been filed. This is intended to improve the coordination between the accuracy-related penalties and the failure to file penalties. Under present law, the courts have dealt with a number of *difficult interpretative* issues on the relationship between the penalty for failure to file a tax return and the accuracy-related penalties. The committee determined that it would *clarify* the law if the penalty for failure to file were entirely separate and distinct from the accuracy-related penalties. * * * [H. Rept. 101-247, at 1393-1394 (1989). Emphasis added.]

See also H. Rept. 101-386 (Conf.), at 651-655 (1989). If the statutory language in question is clear, why did Congress deem it necessary in 1989 to "clarify" that language, and why were the courts addressing "difficult, interpretative issues" thereunder?

Petitioner relies on *Commissioner v. Acker*, 361 U.S. 87 (1959). In that case, however, a different statutory scheme

involving estimated taxes was at issue, and we believe it is not controlling.

Under the above circumstances, we conclude that the regulations under section 6661 at issue in this case constitute a reasonable interpretation of the statutory language of section 6661.

On the basis of stare decisis and on the basis of the reasonableness of the applicable regulations under section 6661, we hold for respondent.

*Decision will be entered for the respondent.*

Reviewed by the Court.

NIMS, PARKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, JACOBS, GERBER, WRIGHT, PARR, WELLS, RUWE, and COLVIN, *JJ.,* agree with the majority opinion.

WHALEN, *J.,* dissents.

---

HALPERN, *J.,* dissenting: I respectfully dissent from the majority's opinion. Neither the statute, its history, nor the principle of *stare decisis* requires the conclusion here reached today.

I. *The Arguments of the Parties*

Petitioner contends that section 6661 cannot properly be interpreted as imposing a penalty where a delinquent, *but accurate,* return is filed. That conclusion turns on the meaning of the term "understatement," as that term is defined in section 6661(b)(2)(A). There, the term is defined as follows:

the term "understatement" means the excess of—
(i) the amount of the tax required to be shown on the return for the taxable year, over
(ii) the amount of tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).
[Sec. 6661(b)(2)(A).]

It cannot be denied that the definition does not, in so many words, address the calculation of an understatement where no return, a late return, or an amended return is filed. Simply, it directs that, to calculate an understate-

ment, the amount of tax shown on the return is subtracted from the amount of tax required to be shown on the return. As simply, the difference between the parties here concerns how the phrase "amount of tax imposed which is shown on the return" is to be interpreted when no return is filed (or, as here, no return is deemed to have been filed).

Respondent contends that a permitted interpretation of the statute can be found in section 1.6661-2(d)(2), Income Tax Regs., which details, among other things, how the tax shown on the return is to be determined when no return is filed or where an amended return is filed. In pertinent part, the regulation provides:

> Tax shown on return. For purposes of section 6661, the amount of tax shown on the return for the taxable year is determined * * * without regard to any amount of additional tax shown on a return (including an amended return, so-called) filed after the taxpayer is first contacted by the Internal Revenue Service concerning the tax liability of the taxpayer for the taxable year. * * * If no return was filed for the taxable year * * * the amount of tax shown on the return is considered to be zero. * * * [Sec. 1.6661-2(d)(2), Income Tax Regs.]

The majority agree with respondent's contention that the regulation contains a proper interpretation of the statute.

## II. *The Majority's Analysis*

According to the majority, the statute "obviously [is] unclear and lacking in guidance as to how the section * * * is to apply to 'no-return,' to 'amended return,' and to 'late-return' situations." Majority op. p. 100. Nevertheless, the majority do not directly address the validity of that interpretation or examine the legislative history of section 6661 in search of authority to support that interpretation. The majority rely principally on our prior opinion in *Estate of McClanahan v. Commissioner*, 95 T.C. 98 (1990), which dealt with a similar fact pattern. Such reliance is unjustified. Although in *Estate of McClanahan* we stated that a reading of the legislative history convinced us that imposition of section 6661 additions to tax was not beyond the scope of the statute, we did not expressly address the validity of the regulation here in dispute. Rather, we concluded that any tax shown on delinquent but original returns was "additional tax" within the meaning of section

1.6661-2(d)(2), Income Tax Regs. The gist of our analysis is contained in the following language:

> Prior to being contacted by the special agent, petitioners had not filed tax returns for the years [in issue]. Consequently, prior to contact, the amount of tax shown on the returns is zero. Sec. 1.6661-2(d)(2), Income Tax Regs. The amount of tax shown on the returns filed subsequent to contact by the Internal Revenue Service is therefore "additional" to the zero amount prior to contact and is plainly within the intendment of section 1.6661-2(d)(2), Income Tax Regs. * * * [*Estate of McClanahan v. Commissioner*, 95 T.C. at 104. [1]]

Contrary to the contention of the majority, our holding in *Estate of McClanahan* therefore deals not so much with the validity of the regulation as with a construction of the regulatory language itself. Furthermore, as admitted by the majority, the only other reference this Court has made to the validity of section 1.6661-(2)(d)(2), Income Tax Regs., is in a footnote in *Woods v. Commissioner*, 91 T.C. 88 (1988). After a search of the case law, I have found no other case dealing with validity of the regulation. In all other decisions of this Court cited by the majority, *supra*, majority op. p. 97, the issue was either not raised or not addressed. The unpublished Fifth Circuit opinion cited by the majority, *Mosher v. Commissioner*, 927 F.2d 599 (5th Cir. 1991), does not address the validity of the regulation but merely cites to the regulation. I thus see our opinion in *Estate of McClanahan*, and our comment in a footnote in *Woods*, as no bar to a thorough examination of the validity of the regulation. For the reasons stated below, I am persuaded that such an examination demands a decision in favor of petitioner. I believe that the regulation is invalid in its application to the "no-return" and "late-return" situations.

---

[1] I have no quarrel with our conclusion in *Estate of McClanahan* to the extent that it would require the conclusion here that sec. 1.6661-2(d)(2), Income Tax Regs., indeed requires respondent to disregard petitioner's returns and to treat him as if he had filed returns showing zero tax due. Although the regulation does not explicitly so provide (stating only that any "additional" tax shown on a return filed after a taxpayer is first contacted by the Internal Revenue Service is to be disregarded), no other reading of the regulation makes sense. Unless petitioner is deemed previously (and prior to having been contacted by respondent) to have filed a return showing a zero tax, the regulation would provide no authority to disregard any of the tax shown on an original return. If, in such situation, the original return were not disregarded, the regulation itself would provide that the substantial understatement addition to tax could be avoided by filing a delinquent return.

## III. *Validity of the Disputed Portion of the Regulation*

### a. *Guidelines for Interpretation*

We are here concerned with a tax statute that imposes a penalty.[2] "The law is settled," the Supreme Court has stated, "that 'penal statutes are to be construed strictly,' * * * and that one 'is not to be subjected to a penalty unless the words of the statute plainly impose it,'." *Commissioner v. Acker,* 361 U.S. 87, 91 (1959) (citations omitted). Moreover, while it is true that Treasury regulations enjoy a presumption of validity, *Acker v. Commissioner,* 258 F.2d 568, 573 (6th Cir. 1958), affd. 361 U.S. 87 (1959), they will not be sustained if "unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501 (1948). With those guidelines in mind, we should proceed to examine the words of the statute (section 6661(b)(2)(A)) to determine whether they support the determination of an understatement when the only return made fully reports the amount of tax required to be shown on that return. I believe that they do not. In relevant part, the statute simply directs that, to determine an understatement, the amount of tax shown on the return is subtracted from the amount of tax required to be shown on the return. The statute does not contain the gloss that the Secretary, by regulation, would attribute to it. That is not to say, however, that the Secretary's attribution necessarily is illegitimate. The general principle was well put by Justice Frankfurter in *Commissioner v. Acker,* 361 U.S. at 94 (Frankfurter, J., dissenting (but this point does not seem to have been in controversy)): "Congress can be the glossator of the words it legislatively uses either by writing its desired meaning, however odd, into the text of its enactment, or by a contemporaneously authoritative explanation accompanying a statute."

---

[2]See *Commissioner v. Acker,* 361 U.S. 87, 91 (1959) (describing as a penalty an addition to tax for substantial underestimation of estimated tax); but see *Helvering v. Mitchell,* 303 U.S. 391, 404-405 (1938) (pointing out that the criminal fraud provisions are "introduced into the act under the heading 'Penalties,' " while the civil fraud provisions are "introduced into the act under the heading 'Additions to the Tax.' "

### b. *Commissioner v. Acker*

It is apt to make reference to *Acker* given the question here at issue. In *Acker,* the Court was concerned with the question whether, under the Internal Revenue Code of 1939, the failure of a taxpayer to file a declaration of estimated income tax not only subjected him to the addition to the tax prescribed for failure to file the declaration but also to the further addition to the tax prescribed for the filing of a "substantial underestimate" of his tax. The Court held invalid a regulation that, for the purpose of determining if a substantial underestimate existed, deemed a failure to file a declaration of estimated tax to be the equivalent of a filed declaration estimating zero tax. *Commissioner v. Acker,* 361 U.S. at 93-94. Justice Frankfurter (dissenting) did not doubt that, to find failure to file a declaration of estimated income to be a "substantial underestimate," would be to attribute to Congress a most unlikely meaning for that phrase *"simpliciter."* Nevertheless, he found persuasive evidence in the legislative history of the provision that Congress did not mean the language in controversy, "however plain it may be to the ordinary user of English," to have the ordinary meaning. Both the Senate report and the House report, he concluded, added a gloss to the phrase "substantial underestimate," which legitimated the position taken in the regulations. *Id.* at 94-95.

### c. *Legislative History*

No similar gloss can be found in the legislative history of section 6661. In *Acker,* Justice Frankfurter pointed out that "the most authoritative form of contemporaneous explanation by Congress of a gloss that it would add to the plain language of legislation is a Congressional report defining the scope and meaning of that legislation." "The most authoritative report," he stated, "is a Conference Report acted upon by both Houses and therefore unequivocally representing the will of both Houses as the joint legislative body." *Id.* at 94. Section 323(a) of Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, 613 (enacting section 6661) originated as a Senate amendment to a House revenue bill (H.R. 4961). See S. Rept. 97-494, at 272-273 (1982). The conference agreement

generally follows that amendment, with changes not here relevant. See H. Rept. 97-760 (Conf.) (1982), 1982-2 C.B. 649-651. The report of the Committee on Finance states the reasons for the amendment as follows:

### Reasons for Change

The committee believes that an increasing part of the compliance gap is attributable to the "audit lottery." The audit lottery is played by taxpayers who take questionable (although non-negligent) positions not amounting to fraud or negligence on their returns in the hopes that they will not be audited. If a taxpayer is audited and the questionable position is challenged, then he or she pays the additional tax owing plus interest. Importantly, however, taxpayers are not exposed to any downside risk in taking highly questionable positions on their tax returns since even resolution of the issue against the taxpayer will require only payment of the tax that should have been paid in the first instance with interest to reflect the cost of the "borrowing." Taxpayers rely on opinions of tax advisors to avoid the possibility of fraud or negligence penalties in taking these highly questionable positions, even though the advisor's opinion may clearly indicate that if the issue is challenged by the Internal Revenue Service, the taxpayer will probably lose the contest. Thus, in the event that the questionable position is not detected, the taxpayer will have achieved an absolute reduction in tax without cost or risk. The committee believes, therefore, that taxpayers should be subject to a penalty designed to deter the use of undisclosed questionable reporting positions. On the other hand, the committee recognizes that taxpayers and the Government may reasonably differ over the sometimes complex Federal tax laws, and that a penalty is not appropriate for in [sic] many cases in which there is a large underpayment. Finally, the committee believes that taxpayers investing in substantial tax shelters should be held to a higher standard of reporting or risk a significant penalty. [S. Rept. 97-494 at 272-273.]

In relevant part, operation of the amendment is explained as follows:

### Explanation of Provision

In general, under the committee bill, when there is a substantial understatement in income tax for any taxable year attributable to an aggressive filing position not disclosed by the taxpayer in the return, * * * an addition to tax equal to * * * [25] percent of such understatement will be imposed.

For this purpose, an understatement is the excess of the amount of income tax imposed on the taxpayer for the taxable year, over the amount of tax shown on the return. * * *

[S. Rept. 97-494 at 273.]

Neither the conference report nor the report of the Committee on Finance gloss the statute in a way that would allow respondent to disregard an original return, showing all of the tax required to be shown, to determine an understatement. As is clear from the Committee on Finance report, the substantial understatement addition was directed at taxpayers taking questionable positions that, if detected, likely would subject them to no more than the proper tax charge plus interest. The "audit lottery" described in the Committee on Finance report is the chance that, given the notoriously low rate of audit coverage by respondent, a return filed by a taxpayer will not be examined. It is not the chance that, if no return is made, the taxpayer will not be caught, for, if it were, the report would not state that taxpayers are exposed to no downside risk (beyond tax and interest) in taking highly questionable positions on their returns. Failure to file without reasonable cause attracts its own addition to tax (described below), which imposes a significant downside risk if that gambit is tried.[3] Because there was no risk (beyond tax and interest) in failing to disclose a questionable position in a return, *therefore* the committee thought a deterrent was necessary. Thus, in explaining when the substantial understatement addition would be imposed, the committee spoke of "an aggressive filing position *not disclosed* by the taxpayer *in* the return [emphasis added]," and, in describing an understatement, "the amount of tax *shown on* the return [emphasis added]." S. Rept. 97-494, at 273. The language of the committee report simply is inconsistent with the notion that Congress intended the substantial understatement addition to apply if the only return ever made fully shows the amount of tax required to be shown. Thus, the report does not add the gloss found in the regulation and upheld by the majority.

### d. *Two Additions for Same Failure*

In fact, the absence of such a gloss is not illogical. When we impose an addition to tax under section 6661 based on

---

[3]In addition, we have said in several opinions that failure to file without reasonable cause is in itself sufficient grounds justifying an addition to tax for negligence. Thus, more than one penalty would attach to the taxpayer who unreasonably fails to timely file.

petitioner's failure to file a return (or his delinquent filing of that return), we are imposing an addition for the same failure for which Congress specifically has provided a separate and very substantial addition. See sec. 6651(a)(1).[4] Nothing in the legislative history of section 6661 persuades me that Congress intended such a duplication. See *Commissioner v. Acker*, 361 U.S. at 93 ("Bearing in mind that we are here concerned with an attempt to justify the imposition of a second penalty for the same omission for which Congress has specifically provided a separate and very substantial penalty, we cannot say that the legislative history of the initial enactment is so persuasive as to overcome the language of [the statute] which seems clearly to contemplate the filing of an estimate before there can be an underestimate."). Although respondent did not here determine additions under both sections 6651 and 6661, he has done so on numerous occasions.[5]

### e. *Explanation for Respondent's Interpretation*

Finally, with regard to the legislative history of section 6661, a possible explanation for respondent's reading of the term understatement can be found in a discarded predecessor to section 323(a) of TEFRA (which enacted section 6661). In the second session of the 97th Congress, during the months prior to enactment of TEFRA, the tax writing committees of the Congress considered two bills dealing with tax compliance: the "Taxpayer Compliance Improvement Act of 1982" (S. 2198; H.R. 5829) and the "Tax Compliance Act of 1982" (H.R. 6300). See Taxpayer Compliance Improvement Act of 1982, Hearing Before the Senate Committee on Finance, 97th Cong., 2d Sess. 47-48, 74-75, 141-142, 267-270, 366-367, 371-373 (March 22, 1982); Tax Compliance Act of 1982, Hearing Before the Committee on Ways and Means, 97th Cong., 2d Sess. 39, 78-80, 167, 267-268 (May 18, 1982). Each contained an addition applica-

---

[4]It appears that respondent would have been justified in here determining an addition to tax under sec. 6651(a)(1) for, without reasonable cause, filing a delinquent return.

[5]See, e.g., *Stamos v. Commissioner*, 95 T.C. 624 (1990); *Estate of McClanahan v. Commissioner*, 95 T.C. 98 (1990); *Woods v. Commissioner*, 91 T.C. 88 (1988); *Doxey v. Commissioner*, T.C. Memo. 1991-150; *Hamby v. Commissioner*, T.C. Memo. 1990-516; *Bush v. Commissioner*, T.C. Memo. 1990-157, affd. without published opinion 921 F.2d 279 (9th Cir. 1990); *Rinkel v. Commissioner*, T.C. Memo. 1989-631; *Patmon v. Commissioner*, T.C. Memo. 1989-159; *Jackson v. Commissioner*, T.C. Memo. 1988-395; *Montelone v. Commissioner*, T.C. Memo. 1986-478.

ble to understatements. In the former bill, the addition was based on an excess "underpayment," with the meaning of that term being generally the same as in section 6653(c). Section 6653 dealt with negligence and fraud and contained a definition of the term underpayment that clearly considered as an underpayment all payments accompanying late filed returns. See sec. 301.6653-1(c)(1)(i), Proced. & Admin. Regs. If enacted, the understatement provision in the Taxpayer Compliance Improvement Act of 1982 would have penalized petitioner in the situation here at issue. That provision, however, was not enacted, Congress enacting instead a provision keyed to the amount of an "understatement," with no direction to find the meaning of that term outside of section 6661. (See discussion in *Woods v. Commissioner,* 91 T.C. at 98 n.19.)

### f. *Extent to Which Regulation Should Be Held Invalid*

For the reasons stated, I would hold section 1.6661-2(d)(2), Income Tax Regs., invalid to the extent that it authorizes respondent to disregard petitioner's original returns and to treat petitioner as if he had made returns showing zero tax due. Such a holding necessarily would also invalidate section 1.6661-2(d)(2) to the extent it prescribes, if no return is filed for the taxable year, that the amount of tax shown on the return is considered to be zero. To the extent that *Estate of McClanahan v. Commissioner, supra,* and *Woods v. Commissioner, supra,* hold otherwise, they should be overruled.

### g. *Subsequent Legislative History*

Before concluding this portion of the dissent, I note (as do the majority) that the issue here presented cannot arise for returns first due after 1989, since, in the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106. Congress repealed section 6661 with respect to such returns. Congress substituted an understatement addition that applies only if a return has been made. Pub. L. 101-239, sec. 7721, 103 Stat. 2106, 2395. See secs. 6662(a), 6662(b)(2), and 6664(b). In making that substitution, Congress implicitly acknowledged that courts had struggled with the prior rule. See H. Rept. 101-247, 1393-1394 (1989);

H. Rept. 101-386, (Conf.) 651-655 (1989) ("This is intended to improve the coordination between the accuracy-related penalties and the failure to file penalties. Under present law, the courts have dealt with a number of difficult interpretative issues on the relationship between the penalty for failure to file a tax return and the accuracy-related penalties.") Contrary to what the majority may imply, Congress did not thus indicate that courts have dealt with those issues correctly, only that they have dealt with them. The issue here under consideration remains an important one because of cases yet to be decided that will be governed by sections 6661 and 6651.

## IV. *Application of the Doctrine of Stare Decisis*

I have concluded that the question here presented should be considered as a new matter. Because the majority emphasize that this is an appropriate occasion to apply the principle of *stare decisis,* however, I feel compelled to comment on the application of that principle. *Stare decisis* embodies the time-honored philosophy *fiat prout consuevit (nil temere novandum)* (let it be done as it hath used to be done (nothing must be rashly innovated)). See Black's Law Dictionary 623 (6th ed. 1990). In determining whether the importance of giving effect to *stare decisis* outweighs the importance of correcting an error in reasoning, construction, or application of the law, however, we must also remember that our system of justice embodies a countervailing philosophy—*fiat justitia, ruat coelum* (let right be done, though the heavens fall). *Ellison v. Georgia Railroad & Banking Co.,* 87 Ga. 691, 696, 13 S.E. 809 (1891). Moreover, we are dealing here with a question of statutory interpretation, where it is the will of the legislature that a court must discover and effectuate. As the U.S. Supreme Court has stated: "We are not bound by reason or by the considerations that underlie *stare decisis* to persevere in distinctions taken in the application of a statute which, on further examination, appear consonant neither with the purposes of the statute nor with this Court's own conception of it." *Helvering v. Hallock,* 309 U.S. 106, 122 (1940); accord *Payne v. Tennessee,* 501 U.S. ____ (1991) (slip op. at 33-36), and cases cited therein. In *Macabe Co. v. Commis-*

*sioner,* 42 T.C. 1105 (1964), we overruled *Rouse v. Commissioner,* 39 T.C. 70 (1962), to the extent that it held, under the Internal Revenue Code provisions dealing with depreciation, that salvage value could be equated with the amount received upon the sale of a depreciable asset. We took that action despite the fact that the Second Circuit Court of Appeals had affirmed *Rouse* on that issue just 2 months earlier.

The majority cite *Vasquez v. Hillary,* 474 U.S. 254 (1986), which in turn quotes in part Justice Brandeis' preeminent discussion of *stare decisis* in his dissent in *Burnet v. Coronado Oil & Gas Co.,* in support of their application of *stare decisis* (majority op. p. 99). That quotation is not complete, however. In his dissent, Justice Brandeis stated as follows:

*Stare decisis* is *usually* the wise policy * * * But * * * [t]he Court bows to the lessons of experience and the force of better reasoning, recognizing the process of trial and error, so fruitful in the physical sciences, is appropriate also in the judicial function. [*Burnet v. Coronado Oil & Gas Co.,* 285 U.S. at 406-408. Emphasis added, fn. ref. omitted.]

In addition, the majority's citation to *Payne v. Tennessee, supra,* seems inappropriate, since there the Supreme Court refused to apply *stare decisis,* and overturned two prior decisions.

I am convinced that we should in this case correct the error and overrule a decision that does not rest on sound policy or reasoning. The precedent I would here overturn *(Estate of McClanahan)* is barely 1 year old, and it has not been relied upon by any other court. It cannot be said that age or reliance has achieved for it a presumption of correctness. Compare *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 268 (1987) (Stevens, J., concurring and dissenting) (in dissent arguing that, by a consistent course of decisions over time, a statute can acquire "a meaning that should be as clear as if the judicial gloss had been drafted by Congress itself.") Moreover, we should not lose sight of the fact that here we are dealing with a penalty provision and not a rule of civil law that was relied upon by the parties in entering into a contract or a sale of land. As the Supreme Court stated in *Payne v. Tennessee,* "Considerations in favor of *stare decisis* are at their acme in

cases involving property and contract rights, where reliance interests are involved." *Payne v. Tennessee, supra,* slip op. at 34. (Indeed, the decision that the majority here rely upon *(Estate of McClanahan)* was not even decided until 22 months after the addition to tax here in question was asserted. Reliance by the parties on that decision simply is not an issue here.) Since the section 6661 addition to tax is punitive in nature, it ought not to be applied except where clearly intended by Congress. What the Supreme Court said in a different context (mail fraud) is applicable here. "There are no constructive offenses; and before one can be punished, it must be shown that his case is plainly within the statute." *McNally v. United States,* 483 U.S. 350, 360 (1987) (quoting *Fasulo v. United States,* 272 U.S. 620, 629 (1926)). For all those reasons, we should not here feel ourselves bound by *stare decisis* to reach a conclusion not authorized by the statute.

CHABOT and BEGHE, *JJ.,* agree with this dissent.