BARNES TRANSPORTATION COMPANY, INC., PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17774.    Promulgated January 31, 1950.

*Robert A. Littleton, Esq.*, for the petitioner.
*Lester M. Ponder, Esq.*, for the respondent.

#### OPINION.

LEECH, *Judge*: This proceeding involves the correctness of a pro-
posed deficiency in excess profits tax for the calendar year 1943 in the
amount of $6,632.34.    In determining the excess profits net income for
the taxable year, respondent denied the petitioner the benefits of sec-
tion 711 and section 735 of the Internal Revenue Code in computing
"nontaxable income."    The propriety of that action is the only issue
submitted.    All the facts were stipulated and are incorporated herein
by reference.    The material facts may be summarized as follows:

The petitioner is a corporation, organized December 28, 1936, under
the laws of the State of West Virginia, with its principal offices and
place of business in Charleston, West Virginia.    The income and ex-
cess profits tax returns of petitioner for the calendar year ended De-
cember 31, 1943, were filed with the collector of internal revenue for
the district of West Virginia.

On December 29, 1936, petitioner entered into an agreement with
United Carbon Co., which provided, *inter alia:*

(1) That petitioner would transport through its pipe lines such
natural gas as should be produced from wells of United, and such wells
as it might later drill, located in seven counties of Kentucky, and de-
liver such gas to the companies which purchased gas from United at
the points where delivery was to be made to the purchasing companies.

(2) That from time to time as required, upon written notice to peti-
tioner from United, petitioner would acquire the rights of way and con-
struct such additional pipe lines at its own expense as might be neces-
sary for the gathering and delivery of any additional gas thereafter
produced from lands and leases of United, and make such additional
pipe lines available to United.

(3) That petitioner was to efficiently maintain and operate its pipe
lines at its own expense.

(4) That petitioner would not transport through its pipe lines any
gas other than that produced by United without the consent of United.

(5) That United was to pay petitioner 9 cents per thousand cubic feet for all gas gathered by means of petitioner's pipe lines and delivered to the companies purchasing such gas from United, the measurement of the gas so gathered and delivered to be based upon the measurements of gas by the various companies purchasing gas from United.

(6) That, if petitioner either failed to construct any necessary additional pipe line or to keep in good repair and operate efficiently its existing pipe lines, United would have the right to do so and to thereupon charge petitioner with the expense thereof, which petitioner agreed to reimburse United.

(7) That in addition to all other remedies under the agreement, United would have the right to take possession of the pipe lines and operate them, so that there might be no interruption of delivery of gas by United to the companies purchasing gas from it, in case petitioner should fail efficiently to maintain, operate, and keep its pipe lines in good repair.

The only substantial property owned by petitioner consists of pipe lines for the transportation of natural gas in the manner provided in the agreement of December 29, 1936, with the United Carbon Co.

The agreement of December 29, 1936, has been in continuous force to the present time. Petitioner does not buy or sell the natural gas transported, nor does it take title to the natural gas transported by use of its pipe-line facilities. No depletion is allowable to petitioner with respect to the natural gas transported by the use of pipe-line facilities owned by it.

On April 14, 1942, United and petitioner agreed that petitioner should receive from United 1.2 cents per thousand cubic feet for the transportation of gas for the year 1942. This rate was continued through 1943 by mutual agreement. On December 20, 1943, the parties agreed that the rate should be 1 cent per thousand cubic feet of gas transported for the year 1944.

All the gross receipts of petitioner for the taxable years 1942 and 1943 were received from United Carbon Co. under the agreement of December 29, 1936, as amended on April 14, 1942, and December 20, 1943.

The quantity of natural gas transported by petitioner for the years 1937 to 1948, inclusive, was as follows:

| | M. cu. ft. | | M. cu. ft. |
|---|---|---|---|
| 1937 | 6,956,190 | 1943 | 9,193,676 |
| 1938 | 5,592,206 | 1944 | 8,314,532 |
| 1939 | 5,143,263 | 1945 | 6,712,811 |
| 1940 | 4,916,255 | 1946 | 5,867,253 |
| 1941 | 5,588,632 | 1947 | 6,841,661 |
| 1942 | 7,448,171 | 1948 | 5,628,939 |

During the calendar year 1936 there were 7,310,818 thousand cubic feet of natural gas transported by the pipe-line facilities that petitioner acquired intact on December 28, 1936, and which petitioner has owned and used during the subsequent years aforesaid, pursuant to the agreement of December 29, 1936, as amended.

The question presented is whether petitioner's activities bring it within the provisions of section 735 of the Internal Revenue Code as amended by section 208 of the Revenue Act of 1943. The pertinent part of that section is set forth in the margin. [1]

Section 735 was originally enacted by the Revenue Act of 1942. Its application was limited to corporations engaged in extracting minerals from mineral properties and in cutting logs from timber blocks. Its purpose was to afford some relief to such companies, since the increased demand due to the war would exhaust the then source of supply sooner than would normally have been the case; therefore additional funds would be required to locate and develop new sources of supply. By

---

[1] SEC. 735. NONTAXABLE INCOME FROM CERTAIN MINING AND TIMBER OPERATIONS, AND FROM NATURAL GAS PROPERTIES.

(a) DEFINITIONS.—For the purposes of this section, section 711 (a) (1) (I) and section 711 (a) (2) (K)—

(1) PRODUCER; LESSOR; NATURAL GAS COMPANY.—The term "producer" means a corporation which extracts minerals from a mineral property, or which cuts logs from a timber block, in which an economic interest is owned by such corporation. The term "lessor" means a corporation which owns an economic interest in a mineral property or a timber block, and is paid in accordance with the number of mineral units or timber units recovered therefrom by the person to which such property or block is leased. The term "natural gas company" means a corporation engaged in the withdrawal, or transportation by pipe line, of natural gas.

(2) MINERAL UNIT, NATURAL GAS UNIT, AND TIMBER UNIT.—* * * The term "natural gas unit" means a unit of natural gas sold by a natural gas company. * * *

(3) EXCESS OUTPUT.—The term "excess output" means the excess of the mineral units, natural gas units, or timber units for the taxable year over the normal output.

(4) NORMAL OUTPUT.—* * * The term "normal output," in the case of a natural gas company, means the average annual natural gas units sold in the taxable years beginning after December 31, 1935, and not beginning after December 31, 1939 (hereinafter called "base period"), of the person owning the natural gas property (whether or not the taxpayer). The average annual mineral units, natural gas units, or timber units shall be computed by dividing the aggregate of such mineral units, natural gas units, or timber units for the base period by the number of months for which the mineral property, natural gas property, or timber block was in operation during the base period and by multiplying the amount so ascertained by twelve. * * *

(5) NATURAL GAS PROPERTY.—The term "natural gas property" means the property of a natural gas company used for the withdrawal, storage, and transportation by pipe line, of natural gas excluding any part of such property which is an emergency facility under section 124.

* * * * * * *

(12) UNIT NET INCOME.—* * * In respect of a natural gas property, the term "unit net income" means the amount ascertained by dividing the net income, computed in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, from such property during the taxable year by the number of natural gas units sold in such year.

(b) NONTAXABLE INCOME FROM EXEMPT EXCESS OUTPUT.—

* * * * * * *

(5) NATURAL GAS COMPANIES.—In the case of a natural gas company any of the natural gas property of which was in operation during the base period, the nontaxable income from exempt excess output for any taxable year shall be an amount equal to the excess output for such year multiplied by one-half of the unit net income for such year.

the Revenue Act of 1943, section 735 was amended to extend relief to certain natural gas companies for similar reasons. Other industries had increased income resulting from demands of the war. Relief was not extended to such industries.

Petitioner contends that it is a "natural gas company" as defined in that section, and is entitled to an exclusion of certain nontaxable income computed as provided therein. It apparently computed the amount of that income upon the basis of units transported. That amount is not in dispute.

A corporation engaged in the transportation of natural gas by pipe line is a "natural gas company" as defined in subdivision (a) (1). Petitioner unquestionably qualifies as a "natural gas company" under a literal interpretation of the statutory definition. However, section 735 contains many other definitions and provisions which must be considered and applied in ascertaining the extent and purpose of the act. It is a cardinal rule of construction that a statute is to be construed as a whole, and not as if each of its provisions was independent and unaffected by others. *Alexander* v. *Cosden Pipe Line Co.*, 290 U. S. 484, 496; *Helvering* v. *New York Trust Co.*, 292 U. S. 455. Thus, other pertinent definitions contained in the controlling section define the terms "natural gas unit," "normal output," and "unit net income." The term "natural gas unit" is defined, in subdivision (a) (2), as a "unit of natural gas sold by a natural gas company." Subdivision (a) (4) defines the term "normal output" as "the average annual natural gas units sold in the taxable years beginning after December 31, 1935, and not beginning after December 31, 1939 (hereinafter called 'base period'), of the person owning the natural gas property (whether or not the taxpayer)." The term "unit net income" is defined in subdivision (a) (12) as "the amount ascertained by dividing the net income, computed in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, from such property during the taxable year by the number of natural gas units sold in such year." By the foregoing references it is clear that the nontaxable income of a natural gas company is to be determined on a basis of natural gas units sold. From the stipulated facts, however, it appears that the only substantial property owned by petitioner consists of pipe lines for the transportation of natural gas in the manner provided in its agreement with the United Carbon Co. Petitioner neither buys nor sells, nor during the taxable year did it buy or sell the natural gas transported through its pipe-line facilities. Therefore it had no such nontaxable income, since the statute furnishes no basis for computing it. To hold otherwise requires the phrase "units sold" to be construed as including "units transported." We lack any such authority. We find no ambiguity in the statute as written. Congress obviously in-

tended that only such natural gas companies as sold the gas they transported by pipe lines were entitled to the benefits provided in section 735 of the Internal Revenue Code, *supra*. It was not the congressional intention to grant such relief to natural gas companies engaged solely in transporting natural gas for hire as was petitioner.

We hold that petitioner is not entitled to the benefits conferred by section 735 of the code. The action of the respondent in denying petitioner any relief thereunder is sustained.

*Decision will be entered for the respondent.*