SECURITY BANK MINNESOTA, PETITIONER *v.*
COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 7552-90. Filed January 21, 1992.

*Sue Ann Nelson* and *Terrance A. Costello,* for petitioner.
*John C. Schmittdiel,* for respondent.

OPINION

COHEN, *Judge:* Respondent determined a deficiency of $48,437.80 in petitioner's Federal income tax for 1986. The issue for decision is whether section 1281 requires petitioner, a commercial bank, to accrue interest on short-term loans made to customers in the ordinary course of its business. If section 1281 does apply to the loans in question, we must determine whether certain of the loans made to petitioner's customers were or were not short-term loans. All section references are to the Internal Revenue Code as in effect for 1986, unless otherwise indicated.

### *Factual Background*

All of the facts have been stipulated, and the stipulated facts are incorporated as our findings by this reference. Petitioner is a corporation with its principal place of business in Minnesota. It prepared its corporate income tax returns on a calendar year basis using the cash method of accounting. During 1986, petitioner recognized total gross receipts of less than $5 million.

At all material times, petitioner was a bank as defined in section 581. As a commercial bank, petitioner made a variety of loans in the ordinary course of its business. Petitioner made loans of varying duration, including loans of less than 1 year, 1 year, and more than 1 year. The loan transactions were exemplified by one-page promissory notes signed by the customer and payable to petitioner. From 1984 through 1988, petitioner had various business reasons for using a note with a term of 1 year or less.

From 1984 through 1988, petitioner made some loans that were documented by notes with a stated maturity date of the first anniversary date of the note. These loans are referred to by the parties as "category X loans". During 1986, petitioner

had interest income of $24,552.09 that had accrued, but was not yet received, on its category X loans.

During 1986, petitioner also made loans that were for a period of less than 1 year. The parties refer to these loans as "category Y loans". During 1986, petitioner had interest income of $80,746.42 that had accrued, but was not yet received, on its category Y loans.

For 1986, petitioner reported interest income from its category X loans and category Y loans as it was received, pursuant to the cash method of accounting. Petitioner did not report as income in 1986 the accrued, but not yet received, interest on its category X and category Y loans.

Respondent determined that petitioner was required to accrue $105,299 of interest income on the category X loans and category Y loans made to petitioner's customers in the ordinary course of petitioner's business. Respondent contends that such accrual is required under section 1281(a)(2).

## *Section 1281*

Sections 1281, 1282, and 1283 were added by section 41 of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 548, and amended by section 1803 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2791. As in effect for 1986, the pertinent provisions of section 1281 are as follows:

SEC. 1281. CURRENT INCLUSION IN INCOME OF DISCOUNT ON CERTAIN SHORT-TERM OBLIGATIONS.

(a) GENERAL RULE.—In the case of any short-term obligation to which this section applies, for purposes of this title—

(1) there shall be included in the gross income of the holder an amount equal to the sum of the daily portions of the acquisition discount for each day during the taxable year on which such holder held such obligation, and

(2) any interest payable on the obligation (other than interest taken into account in determining the amount of the acquisition discount) shall be included in gross income as it accrues.

(b) SHORT-TERM OBLIGATIONS TO WHICH SECTION APPLIES.—

(1) IN GENERAL.—This section shall apply to any short-term obligation which—

(A) is held by a taxpayer using an accrual method of accounting,

(B) is held primarily for sale to customers in the ordinary course of the taxpayer's trade or business,

(C) is held by a bank (as defined in section 581),

(D) is held by a regulated investment company or a common trust fund,

(E) is identified by the taxpayer under section 1256(e)(2) as being part of a hedging transaction, or

(F) is a stripped bond or stripped coupon held by the person who stripped the bond or coupon (or by any other person whose basis is determined by reference to the basis in the hands of such person).

\* \* \* \* \* \* \*

(c) CROSS REFERENCE.—For special rules limiting the application of this section to original issue discount in the case of nongovernmental obligations, see section 1283(c).

## Certain pertinent provisions of section 1283 are as follows:

SEC. 1283. DEFINITIONS AND SPECIAL RULES.

(a) DEFINITIONS.—For purposes of this subpart—

(1) SHORT-TERM OBLIGATION.—

(A) IN GENERAL.—Except as provided in subparagraph (B), the term "short-term obligation" means any bond, debenture, note, certificate, or other evidence of indebtedness which has a fixed maturity date not more than 1 year from the date of issue.

(B) Exceptions for tax-exempt obligations.—The term "short-term obligation" shall not include any tax-exempt obligation (as defined in section 1275(a)(3)).

\* \* \* \* \* \* \*

(c) SPECIAL RULES FOR NONGOVERNMENTAL OBLIGATIONS.—

(1) IN GENERAL.—In the case of any short-term obligation which is not a short-term Government obligation (as defined in section 1271(a)(3)(B))—

(A) sections 1281 and 1282 shall be applied by taking into account original issue discount in lieu of acquisition discount, and

(B) appropriate adjustments shall be made in the application of subsection (b) of this section.

Sections 1281 and 1283 are included within Part V—Special Rules for Bonds and Other Debt Instruments, consisting of sections 1271 through 1288.

Sections 1271 through 1275 comprise Subpart A—Original Issue Discount. These sections set forth rules for accrual of the excess of the stated redemption price at maturity over the issue price of an obligation. Sec. 1273(a)(1). Such rules evolved from administrative practice and Court decisions prior to 1969 and were codified as section 1232 by the Tax Reform Act of 1969, Pub. L. 91-172, sec. 413, 83 Stat. 487, and section 1232A by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 231, 96 Stat. 324. Among other things, the 1969 changes for the first time ended nonparallel treatment of

original issue discount between holders and issuers. See, generally, 1 Peat, Marwick, Mitchell & Co., Taxation of Financial Institutions, sec. 9.03[2] (1990). Although the rules changed from time to time, the concept of taxing original issue discount as ordinary income was not new in 1984. See generally 2 Mertens, Law of Federal Income Taxation, sec. 12C.02 (1990).

Section 1272(a)(2)(C) excepts short-term obligations from the general rule requiring inclusion in income of original issue discount. Section 1271(a)(4), however, applies that concept to gains realized on sale of short-term nongovernmental obligations.

Sections 1276 through 1278 constitute Subpart B—Market Discount on Bonds. These rules were adopted in 1984, Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 41(a), 98 Stat. 548, and provide for accrual of the excess of the stated redemption price of a bond at maturity over the basis of such bond immediately after its acquisition by the taxpayer. Sec. 1278(a)(2). These sections do not apply to short-term obligations. Sec. 1278(a)(1)(B)(i).

Sections 1281, 1282, and 1283 comprise Subpart C—Discount on Short-Term Obligations. Section 1282, which does not apply to obligations to which section 1281 applies, sets forth a general rule that the net direct interest expense with respect to any short-term obligation shall be allowed as a deduction for the taxable year only to the extent that the expense exceeds the sum of the daily portions of the acquisition discount for each day during the taxable year on which the taxpayer held the obligation.

The common thread of the sections included in Part V is that amounts defined as "discount" are to be taken into account as ordinary income in some appropriate manner. No inference may be drawn from grouping of these sections. Sec. 7806(b). Reference to the whole statute is appropriate, however, in interpreting the language and intent of the sections in issue. Respondent's position in this case relies solely on section 1281(a)(2). Respondent's brief states:

Respondent does not contend in this case that the interest from the short-term obligations at issue represents original issue discount, although it arguably does. See Prop. Treas. Reg. sec. 1.1273-1(b)(1)(ii)(D). But compare Treas. Reg. sec. 1.1232-3(b)(1)(iii)(a). The interest at issue is clearly covered

by subsection (a)(2); therefore, respondent does not contend that subsection (a)(1), concerning acquisition discount and original issue discount (see section 1283(c)(1)), controls. * * *

## The "Plain" Language Arguments

Each of the parties argues that the plain language of section 1281 "clearly" or "patently" supports that party's interpretation. Petitioner contends that the plain language and legislative history of section 1281 establish that the section was not intended to require interest accrual on short-term loans made in the ordinary course of business. Respondent contends that the language of section 1281 unambiguously applies to petitioner's loans. Respondent discounts petitioner's references to legislative history. The parties agree that this is a case of first impression.

With respect to the plain language of section 1281, petitioner points to the references in sections 1281(a) and 1283(a)(2) to acquisition discount and argues that section 1281 applies only to investors who purchase, i.e., "acquire", short-term obligations with acquisition discount and to taxpayers who purchase or "acquire" discounted short-term nongovernmental obligations involving original issue discount. Petitioner points to the use in various other sections in Part V (e.g., secs. 1272, 1273, 1283) of terms such as purchase, purchase agreement, price, and issue. Petitioner also notes that the effective date of section 1281 has always been stated in terms of instruments "acquired" after a certain date, now December 31, 1985. Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1018(c)(1), 102 Stat. 3578. See Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 44(d), 98 Stat. 560 ("obligations acquired after the date of enactment," July 18, 1984), and Tax Reform Act of 1986, Pub. L. 99-514, sec. 1803(a)(8)(A), 100 Stat. 2794 (amendments "Effective with respect to obligations acquired after September 27, 1985").

Petitioner argues that the use of the word "and" to connect section 1281(a)(1) and (2) indicates that section 1281(a) governs only short-term obligations that have both acquisition discount and stated interest. Respondent, according to petitioner, would have us ignore section 1281(a)(1) and view section 1281(a)(2) in isolation.

Respondent states:

Petitioner's interpretation of the applicability of section 1281 is incorrect. First, the statutory language refers to short-term obligations "held by a bank". Section 1281(b)(1)(C). To be "held by a bank" an obligation must first be acquired. A bank, such as petitioner, acquires a short-term obligation when it makes a short-term loan to a borrower. * * *

Respondent relies on a broad dictionary definition of "acquire" and asserts that the term is broad enough to encompass petitioner's short-term loan transactions. Respondent also argues that, if the statutory title (i.e., "inclusion in income of discount") is inconsistent with respondent's position, the heading of the section cannot limit the plain meaning of the text. See *Brotherhood of Railroad Trainmen v. Baltimore & O. R.R.,* 331 U.S. 519, 528-529 (1947).

In the Code and in normal bank parlance, terms such as acquisition and issue commonly refer to third-party debt instruments; "loans" are "made" by a bank to its customers. See, for example, section 581 (defining banks as, among other things, in the business of making loans) and section 279(c) (defining the lending or finance business in terms of making loans or purchasing or discounting accounts receivable, notes, or installment obligations). The terms "loan" and "made" are noticeably absent from the definition of short-term obligations in section 1283(a)(1)(A).

We believe that, under these circumstances, the so-called "plain meaning" is sufficiently ambiguous to justify reference to legislative history in resolving the ambiguity. We also agree with petitioner that we must decide this issue based on application of the entire statute and not by taking words out of context. See, e.g., *United States v. American Trucking Associations,* 310 U.S. 534 (1940); *Barnes Transportation Co. v. Commissioner,* 14 T.C. 123, 126 (1950).

### *Legislative History*

Petitioner traces the origin of section 1281(a)(1) to a February 17, 1984, hearing pamphlet prepared by the Staff of the Joint Committee on Taxation. Staff of Joint Comm. on Taxation, Proposals Relating to Tax Shelters and Other Tax Motivated Transactions (J. Comm. Print 1984). The hearing

pamphlet proposed that interest incurred to purchase or carry short-term discount obligations should not be deductible until the interest paid on the obligations was included in the investor's income or, alternatively, the discount was accrued for purposes of reporting income. The pamphlet described certain tax-motivated transactions in which investors could defer income on a discount obligation to a subsequent tax year while deducting interest incurred to purchase the obligation in a current tax year. These themes were repeated in the hearings conducted during 1984. See, e.g., Tax Shelters, Accounting Abuses, and Corporate and Securities Reforms: Hearings Before the House Committee on Ways and Means, 98th Cong., 2d Sess. 3 (1984). Similar concerns were expressed in various reports prepared before and after the statute was adopted. See H. Conf. Rept. 98-861, at 757, 807-810 (1984) 1984-3 C.B. (Vol. 2) 11, 61-64; Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 (J. Comm. Print 1984) (the Bluebook). For example, the conference committee report described the "present law", the House bill, the Senate amendment, and the conference agreement as follows:

*Present law*

There is a statutory exception to the rule requiring the periodic inclusion of acquisition discount on short-term government obligations payable without interest at a fixed maturity not exceeding one year. A similar exception is provided by Treasury regulations for OID on short-term obligations other than government obligations. In many cases, interest on indebtedness incurred to purchase or carry obligations eligible for an exception can be deducted currently against ordinary income to generate a one-year tax deferral.

*House bill*

### Definition of short-term obligation

The term "short-term obligation" is defined as any bond, debenture, note, certificate, or other evidence of indebtedness that has a fixed maturity date not more than one year from the date of issue.

### Mandatory accrual of OID or acquisition discount

Under the House bill, taxpayers are required to accrue OID or acquisition discount currently with respect to short-term obligations that (i) are held by a taxpayer using an accrual method of accounting, (ii) held by a bank, (iii) held primarily for sale to customers in the ordinary course of the taxpayer's trade or business, or (iv) identified by the taxpayer as being part of a

hedging transaction. This provision is effective for obligations acquired after the date of enactment.

 \* \* \* \* \* \* \*

*Senate amendment*

The Senate amendment includes the provision in the House bill that limits the ability to take interest deductions on indebtedness attributable to obligations eligible for an exception. The Senate amendment does not, however, include the provision that requires certain taxpayers to accrue discount currently.

 \* \* \* \* \* \* \*

*Conference agreement*

The conference agreement follows the House bill with several modifications. [The modifications are not relevant here. H. Rept. 98-861, 757, 807-808, 1984-3 C.B. (Vol. 2) 11, 61-62.]

The Bluebook "Overview" of the provision explains:

The Act limits the scope of the special rules permitting deferral of acquisition and original issue discount. In addition, the Act limits the ability to use leveraged purchases of short-term discount obligations within the special rules to defer tax on ordinary income. An election is provided under which taxpayers can avoid application of the interest-deferral rule by electing to include discount in income as it accrues. [Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 at 101 (J. Comm. Print 1984).]

As petitioner argues, all of the available material is expressed in terms relating to purchased or acquired instruments, not expressly to loans made.

Respondent relies on the absence of any language in the legislative history expressly exempting loans made by a bank in the ordinary course of its business from application of section 1281(a). It does not surprise us, however, that, in enacting a change, Congress expressed that which it was accomplishing and did not list all of the general rules that it was not changing. At all material times, petitioner was eligible to report its income and expenses on a cash method. See secs. 446 and 448. Respondent also asserts that section 1281, as a specific section, must control over section 448, a provision of general application. That position begs the question of whether section 1281 applies at all to the loans in question here.

As we have noted (*supra* p. 37), the common thread of the sections included in Part V (i.e., sections 1271-1288) is that

amounts defined as discount are to be taken into account as ordinary income in some appropriate manner. Thus the obligations or instruments to which Part V applies are obligations or instruments that involve some sort of discount—in the case of section 1281, acquisition discount (or, by operation of section 1283(c)(1)(A), original issue discount). There is no indication that any of the loans here in dispute involve discount—indeed, respondent seems to disclaim any such contention, at least as to original issue discount (*supra* pp. 37-38).

We conclude that the legislative history supports petitioner's interpretation of section 1281, i.e., that it was enacted in 1984 to deal with problems associated with purchased debt instruments involving a discount and not with loans made by a bank in the ordinary course of its business. Accordingly, we hold that the loans here in dispute are not the sort of obligations or instruments to which section 1281 applied as enacted in 1984.

The parties also disagree about the effect of the 1986 amendment of section 1281(a), which added section 1281(a)(2). Tax Reform Act of 1986, Pub. L. 99-514, sec. 1803, 100 Stat. 2794. Petitioner argues that the change merely clarified that investors purchasing short-term obligations with acquisition or original issue discount would also be required to accrue any stated interest payable on such obligations. Here again petitioner argues that the use of the term "and" to connect the two subparagraphs of section 1281(a) demonstrates that Congress intended to apply the discount accrual rules to short-term obligations with both acquisition discount and stated interest. Respondent replies:

Rather, Section 1281(a) must be read as requiring the inclusion in income of the holder of a short-term obligation of both the daily portion of the acquisition discount or original issue discount (*i.e.,* unstated interest) and any stated interest payable on the obligation if the obligation so provides. This application of Section 1281(a) is explained in the Committee Reports accompanying the (a)(2) amendment added by the Tax Reform Act of 1986.

The bill clarifies that taxpayers subject to the rule for mandatory accrual [*e.g.,* banks] are required to include in income for a taxable year all amounts of interest allocable to that year with respect to short-term obligations, *irrespective of whether the interest is stated or is in the form of acquisition discount or OID, and irrespective when any stated interest is paid.*
[H. Rept. 99-426, at 886 (1985); S. Rept. 99-313, at 903 (1986).]

On balance, we agree with petitioner. We do not believe that the 1986 amendment, which originated as a technical correction, was intended to increase the coverage of section 1281(a) to loans made if, as we have concluded, such loans were not covered by the 1984 Act. The amendment, in our view, was intended to express the amounts to be taken into current income and not to expand the category of instruments covered by section 1281(a).

Finally, respondent argues that we should draw an inference in his favor from the failure of Congress to enact a legislative exception for short-term loans when such an exception was proposed in 1987. H.R. 2323, 100th Cong., 1st Sess. 1 (1987); S. 1239, 100th Cong., 1st Sess. 1 (1987). Without any indication of the reasons for such inaction, we cannot draw any inferences. See *United States v. Price,* 361 U.S. 304, 310-312 (1960).

Our decision is unaffected by respondent's publication of Rev. Proc. 90-37, 1990-2 C.B. 361, which provides that certain taxpayers, including banks, may obtain expeditious consent to change their accounting method to report interest on short-term loans to customers to accord with section 1281. That procedure is merely consistent with respondent's argument in this case and is not independent authority for respondent's position. Similarly, section 1.1273-2(b)(2), Proposed Income Tax Regs., 51 Fed. Reg. 12061-12062 (Apr. 8, 1986), is not authority for the proposition that the term "issue" applies to loans made as that term is commonly used. Finally, we are unpersuaded by the arguments of each party that sustaining the position of the other would lead to an absurd result. We are merely construing the statutory language in view of its legislative history, and we express no opinion on the preferable policy.

After giving due consideration to all of the arguments of the parties, we conclude that section 1281(a) does not require petitioner to accrue interest on the short-term loans made to customers in the ordinary course of its business.

*Decision will be entered for petitioner.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, SHIELDS, CLAPP, WRIGHT, PARR, WELLS, WHALEN, COLVIN, and BEGHE, *JJ.,* agree with the majority opinion.

---

HALPERN, *J.,* dissenting. I believe that the majority is wrong in concluding that section 1281 does not require a bank to accrue interest on short-term loans made to customers in the ordinary course of its business. That conclusion is neither called for by the language of the statute nor supported by the statute's legislative history. I would hold that the short-term loans in question have acquisition discount of zero (if that is indeed the case) and that any stated interest must be taken into account as it accrues.

The majority would hold to the contrary for two reasons, each of which is sufficient to justify its holding. First, the majority concludes that section 1281 was enacted solely to address problems associated with purchased debt instruments and not with loans made by a bank in the ordinary course of its business. See majority op. pp. 41-42. Secondly, the majority concludes that Congress intended section 1281 to apply to stated interest only if the short-term obligation in question also gives rise to acquisition discount. See majority op. p. 42.

As to the majority's first ground, I believe that the majority has put too much stock in the word "acquisition" in the term acquisition discount and has misread the legislative history of subtitle C, title I, division A, Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 531 (sec. 41 of which enacted secs. 1281 through 1283). Prior to DEFRA, a deferral rule applied both to acquisition discount, which was a term used to describe discount on short-term governmental obligations, and to original issue discount on certain short-term obligations held by cash-method taxpayers. See section 1232A(a)(2)(C), prior to its repeal by section 42(a)(1) of DEFRA (no current inclusion of original issue discount on short-term Government obligations); H. Rept. 98-432 (Part II) at 1174 (1984), 1984 U.S.C.C.A.N. 697, 848; sec. 1.1232-3(b)(1)(iii) Income Tax Regs. (similar with regard to other short-term obligations).

The legislative history of sections 1281 through 1283 indicates that discount on short-term obligations was made subject to accrual reporting because of two concerns: (1) That the contrary rule allowing deferral of acquisition discount on short-term governmental obligations was inappropriate for accrual-method taxpayers, and (2) that taxpayers had been making leveraged purchases of short-term discount obligations at year's end to achieve tax deferral. H. Rept. 98-432 (Part II), *supra* at 1174; H. Conf. Rept. 98-861, 1984-3 C.B. (Vol. 2) 61. The report of the Ways and Means Committee states that: "Only for the *ordinary* investor making unleveraged purchases of Treasury bills or other short-term discount obligations does the Committee believe that the present tax deferral remains appropriate." H. Rept. 98-432 (Part II), *supra* at 1174 (emphasis added). It is consistent with that statement to conclude that Congress viewed cash-method banks as extraordinary investors who, for that reason alone, should not be permitted any deferral on short-term obligations, with the question of leverage being irrelevant. Alternatively, it would be consistent with the committee report to conclude that Congress believed deferral on short-term discount obligations never appropriate for a bank, because leverage plays a role in all situations in which banks obtain short-term obligations. After all, banks, being in the business of borrowing and lending funds every day, are necessarily leveraged to a substantial degree.

Under either rationale, there would be no reason for distinguishing between purchased short-term obligations and short-term obligations arising from a bank's own loans (loans not purchased). In both contexts, a bank fails to qualify as the "ordinary investor" for whom the committee considered tax deferral appropriate; and, in both contexts, leverage plays an equal role. Thus, the purposes of the statute, as can most clearly be divined from the available legislative history, would best be served by reading section 1281 as treating those two situations, which are alike in all relevant respects, in the same manner. The language of the statute does not prohibit and,

indeed, invites such a reading.[1] The majority fails to explain why Congress' concerns in any way were dependent upon the manner in which a bank, or some other entity, obtains a short-term obligation. I would not read section 1281 as limited in application to purchased obligations.

Alternatively, the majority agrees with petitioner that Congress intended to apply accrual accounting only to short-term obligations with *both* acquisition discount *and* stated interest. Majority op. p. 42. However, the available information overwhelmingly contradicts that view. Preliminarily, I note that the language of the statute itself imposes a formidable barrier to the majority's interpretation. Section 1281(a) provides (1) that acquisition discount shall be included in gross income and (2) that stated interest shall be included in gross income: neither command is conditional in any way. While, arguably, that language is not sufficiently plain that no additional inquiry need be made, a contrary interpretation, at a minimum, ought to be somewhat logical and amply supported by the legislative history. Yet, the unusual interpretation advocated by the majority is amply refuted on both grounds.

Apparently, in the majority's view, a taxpayer otherwise on the cash method that held both a short-term obligation with stated interest and no discount and a similar obligation with stated interest and a discount representing 1 percent would report the stated interest on the first obligation under the cash method and the stated interest on the second obligation under the accrual method. An interpretation that taxes differently the stated interest on these two obligations seems illogical.

More specifically, I am not clear on whether the majority means that the first requirement (acquisition discount) is a precondition for taxing under the accrual method the second (stated interest) or that each is a precondition for taxing under the accrual method the other. If the majority holds the latter

---

[1]Under sec. 1283(c)(1), in the case of short-term nongovernmental obligations, original issue discount is taken into account in lieu of acquisition discount. Original issue discount certainly can arise in connection with a bank's own (nonpurchased) obligations. Sec. 1272, which requires the current inclusion in income of original issue discount (with an exception for short-term obligations), speaks in terms of the "holder" of a debt instrument having original issue discount and is effective for debt instruments "issued" after a certain date. It has not been argued that sec. 1272 applies only to purchased obligations.

view, then I suppose that it would not apply accrual accounting to a short-term obligation with acquisition discount but no stated interest. Even if the majority means only the former, that seems clearly inconsistent with the language of the statute and the intent of Congress. The committee reports from both the Senate and the House explain the 1986 amendment to section 1281(a) that provided for accrual taxation of stated interest, as follows:

*Present Law*

Under section 1281 of the Code, certain taxpayers are required to include as interest for a taxable year that portion of the acquisition discount or OID on a short-term obligation that is allocable to the portion of the taxable year during which the taxpayer held the obligation. * * *

*Explanation of Provision*

The bill clarifies that taxpayers subject to the rule for mandatory accrual are required to include in income for a taxable year all amounts on interest allocable to that year with respect to short-term obligations, *irrespective of whether the interest is stated or is in the form of acquisition discount or OID,* and irrespective of when any stated interest is paid. For example, a calendar-year taxpayer designated in section 1281(b) holds an obligation from the time it is issued on October 1, 1985 until its maturity on October 1, 1986. Under the bill, the taxpayer is required to include in income for 1985 the equivalent of three months interest on the obligation, *regardless of whether the interest income is in the form of acquisition discount, OID, stated interest, or any combination thereof.*

H. Rept. 99-426, 877, 886 (1985), 1986-3 C.B. (Vol. 2) 877, 886; S. Rept. 99-313, 893, 902-903 (1986), 1986-3 C.B. (Vol. 3) 893, 902-903 (emphasis added).[2]

As stated earlier, I would apply section 1281 to the short-term obligations in question by treating them as if they have acquisition discount of zero (if that is so) and by requiring accrual of any stated interest.

KÖRNER, HAMBLEN, SWIFT, GERBER, and RUWE, *JJ.,* agree with this dissent.

---

[2]Congress does not appear to have considered the extent to which the policy inherent in the accrual rule adopted with respect to stated interest on short-term obligations conflicts with the exception to general accrual accounting available to small taxpayers (including banks) found in sec. 448(b)(3).