111 T.C. No. 8

UNITED STATES TAX COURT

SECURITY STATE BANK, Petitioner <u>v</u>. COMMISSIONER OF INTERNAL
REVENUE, Respondent

Docket No. 15478-96.                   Filed September 3, 1998.

P is a bank that uses the cash method of
accounting.  During 1989, P made short-term loans to
customers.  The principal and interest on the loans
were payable at maturity.  R determined that P must
accrue interest and/or original issue discount on the
loans pursuant to sec. 1281(a)(1) and (2), I.R.C.

<u>Held</u>:  Sec. 1281(a)(2), I.R.C., does not require a
bank to accrue interest on short-term loans made in the
ordinary course of its business.  <u>Security Bank Minn.
v. Commissioner</u>, 98 T.C. 33 (1992), affd. 994 F.2d 432
(8th Cir. 1993).

<u>Held</u>, <u>further</u>:  Sec. 1281(a)(1), I.R.C., does not
require a bank to accrue original issue discount on
short-term loans made in the ordinary course of
business.

<u>Martin J. Peck</u>, for petitioner.

<u>Charles M. Berlau</u>, for respondent.

OPINION

RUWE, <u>Judge</u>: Respondent determined a deficiency of $29,972.41 in petitioner's 1989 Federal corporate income tax. The issue for decision is whether section 1281(a)[1] requires petitioner, a cash basis taxpayer, to accrue interest and/or original issue discount earned on short-term loans.

## Background

The parties submitted this case fully stipulated. The stipulation of facts and supplemental stipulation of facts are incorporated herein by this reference. Petitioner is a corporation whose principal place of business was in Wellington, Kansas, at the time it filed the petition.

Petitioner is a commercial bank that makes a variety of loans in the ordinary course of its business. These loans are of varying duration, including loans of less than 1 year, loans of 1 year, and loans of more than 1 year. Petitioner had, and still has, business reasons for using notes with a term of 1 year or less.

During 1989, petitioner made some loans that were documented by promissory notes with a stated maturity date that was 1 year from the date the notes were issued. Such loans will

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

be referred to as category X loans. Petitioner held the category X loans on December 31, 1989. During 1989, petitioner also made some loans that were documented by promissory notes with a stated maturity date that was less than 1 year from the date the notes were issued. Such loans will be referred to as category Y loans. Petitioner held the category Y loans on December 31, 1989. The interest and principal payable on all categories X and Y loans were due at maturity.

Petitioner reported its taxable income using the cash method of accounting. Petitioner reported interest income from its categories X and Y loans as it was received pursuant to the cash method of accounting.

Petitioner had interest income of $60,086.89 during 1989 that had accrued, but was not yet paid, on its category X loans. Petitioner had interest income of $65,687.11 during 1989 that had accrued, but was not yet paid, on its category Y loans.

## Discussion

Petitioner uses the cash method of accounting to report its taxable income. Consistent with that method, it did not report as income on its 1989 return any accrued interest or original issue discount that was earned but unpaid at the end of 1989. Respondent does not contest petitioner's general use of the cash

method.[2]  Rather, respondent relies on the specific provisions of section 1281 requiring the accrual of income earned on short-term obligations.

The pertinent provisions of section 1281(a) are as follows:

SEC. 1281.    CURRENT INCLUSION IN INCOME OF DISCOUNT ON
              CERTAIN SHORT-TERM OBLIGATIONS.

(a)  General Rule.--In the case of any short-term obligation to which this section applies, for purposes of this title--

(1) there shall be included in the gross income of the holder an amount equal to the sum of the daily portions of the acquisition discount for each day during the taxable year on which such holder held such obligation, and

(2) any interest payable on the obligation (other than interest taken into account in determining the amount of the acquisition discount) shall be included in gross income as it accrues.

(b)  Short-Term Obligations to Which Section Applies.--

(1) In general.--This section shall apply to any short-term obligation which--

*      *      *      *      *      *      *

(C) is held by a bank (as defined in section 581),

*      *      *      *      *      *      *

(c)  Cross Reference.--For special rules limiting the application of this section to original issue discount in the case of nongovernmental obligations, see section 1283(c).

---

[2]Although it is not explicitly indicated in the record, it appears that petitioner was allowed to use the cash method of accounting in 1989 because it had gross income of less than $5 million.  See secs. 446(a), (c)(1), 448(b)(3).

Certain pertinent provisions of section 1283 are as follows:

SEC. 1283. DEFINITIONS AND SPECIAL RULES.

(a) Definitions.--For purposes of this subpart--

(1) Short-term obligation.--

(A) In general.--Except as provided in subparagraph (B), the term "short-term obligation" means any bond, debenture, note, certificate, or other evidence of indebtedness which has a fixed maturity date not more than 1 year from the date of issue.

(B) Exceptions for tax-exempt obligations.-- The term "short-term obligation" shall not include any tax-exempt obligation (as defined in section 1275(a)(3)).

* * * * * * *

(c) Special Rules for Nongovernmental Obligations.--

(1) In general.--In the case of any short-term obligation which is not a short-term Government obligation (as defined in section 1271(a)(3)(B))--

(A) sections 1281 and 1282 shall be applied by taking into account original issue discount in lieu of acquisition discount, and

(B) appropriate adjustments shall be made in the application of subsection (b) of this section.

Respondent's first argument is that petitioner is required to accrue interest income from its categories X and Y loans pursuant to section 1281(a)(2). This is not an issue of first impression. Indeed, respondent recognizes that in Security Bank Minn. v. Commissioner, 98 T.C. 33, 42 (1992), affd. 994 F.2d 432 (8th Cir. 1993), we held that section 1281(a)(2) does not apply

to short-term loans made by banks in the ordinary course of business. Respondent recognizes that our prior opinion precludes application of section 1281(a)(2) to the facts in the instant case, unless we choose to overrule it. Respondent urges us to do just that.

Security Bank Minn. v. Commissioner, supra, was a Court-reviewed opinion. The majority opinion contains an extensive analysis of the statute, its evolution, the context in which it appears, and its legislative history. There was a dissenting opinion which was joined by five Judges. In affirming our opinion, the Court of Appeals for the Eighth Circuit also made an extensive analysis of the same factors. One of the judges on the Court of Appeals panel dissented.

No purpose would be served by repeating the statutory analysis that led this Court and the Court of Appeals to decide that section 1281(a)(2) does not apply to loans made by banks in the ordinary course of business. Suffice it to say that this matter has been thoroughly considered and decided. The doctrine of stare decisis generally requires that we follow the holding of a previously decided case, absent special justification. This doctrine is of particular importance when the antecedent case involves statutory construction. Hesselink v. Commissioner, 97 T.C. 94, 99-100 (1991). While respondent has skillfully rearticulated his arguments in support of a different interpretation of the statute, we find nothing therein that would

cause us to refrain from applying the doctrine of stare decisis with respect to the section 1281(a)(2) issue.[3]

Respondent alternatively argues that the loans in question were made in return for notes that contained "original issue discount" within the purview of sections 1281(a)(1) and 1283. According to respondent, section 1281(a)(1) requires petitioner to accrue the daily portion of that discount during the year in which the note was held, regardless of whether petitioner actually received anything in that year.

In Security Bank Minn. v. Commissioner, supra at 37, the Commissioner refrained from arguing that section 1281(a)(1) applied, although he stated on brief that it "arguably does." It was therefore not necessary for us to make a specific holding regarding the application of section 1281(a)(1). In a technical sense, respondent's proposed application of section 1281(a)(1) presents an issue of first impression. However, we believe that the analysis upon which the holding in Security Bank Minn. was based compels us to hold against respondent's argument that section 1281(a)(1) applies in the instant case.

Our holding in Security Bank Minn. that section 1281(a)(2) did not apply to loans made by banks in the ordinary course of

---

[3]Respondent has made no argument that the issues presented are of great overall significance. Sec. 448 generally precludes corporations with more than $5 million in gross receipts from using the cash method of accounting. Thus, our holdings appear to have application only to small banks.

business was based on our interpretation of section 1281 as originally enacted in 1984. As originally enacted, section 1281(a) applied only to acquisition discount or original issue discount. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 41, 98 Stat. 548. Section 1281 was amended in 1986 to add the provisions of section 1281(a)(2). Tax Reform Act of 1986, Pub. L. 99-514, sec. 1803, 100 Stat. 2791. In Security Bank Minn., we first analyzed section 1281 in its original form. On the basis of that analysis, we stated:

> We conclude that the legislative history supports petitioner's interpretation of section 1281, i.e., that it was enacted in 1984 to deal with problems associated with purchased debt instruments involving a discount and not with loans made by a bank in the ordinary course of its business. Accordingly, we hold that the loans here in dispute are not the sort of obligations or instruments to which section 1281 applied as enacted in 1984. [Security Bank Minn. v. Commissioner, supra at 42.]

We then concluded that the addition of section 1281(a)(2) in 1986 was not intended to cover loans made by banks.

> We do not believe that the 1986 amendment, which originated as a technical correction, was intended to increase the coverage of section 1281(a) to loans made if, as we have concluded, such loans were not covered by the 1984 Act. The amendment, in our view, was intended to express the amounts to be taken into current income and not to expand the category of instruments covered by section 1281(a). [Id. at 43.]

Our analysis in Security Bank Minn. v. Commissioner, supra, makes clear that we have interpreted section 1281 as having no

application to loans made by banks in the ordinary course of business, regardless of whether the loans are characterized as generating interest or original issue discount.[4]  We, therefore, hold that section 1281(a)(1) does not apply to the loans in issue.

<u>Decision will be entered</u>

<u>for petitioner</u>.

---

[4]Because of our legal conclusion, there is no need to decide whether respondent is correct in characterizing the loans in issue as generating original issue discount.