F I L E D
United States Court of Appeals
Tenth Circuit

JUN 7 2000

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SECURITY STATE BANK,

Petitioner-Appellee,

v.

COMMISSIONER OF INTERNAL
REVENUE,

Respondent-Appellant.

No. 99-9002

---

**Appeal from the United States Tax Court**
**(Tax Court No. 15478-96)**

---

Martin J. Peck, Wellington, Kansas, for Petitioner-Appellee.

Charles Bricken (Loretta C. Argrett, Assistant Attorney General, and Jonathan S. Cohen with him on the briefs), Department of Justice, Washington, D.C., for Respondent-Appellant.

---

Before **SEYMOUR, BRORBY** and **EBEL**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

In this appeal, we are faced with precisely the issue decided by the Eighth

Circuit in *Security Bank Minnesota v. Commissioner*, 994 F.2d 432 (8th Cir.

1993):

> whether § 1281 of the Internal Revenue Code, which requires certain taxpayers to accrue discount and interest income on certain short-term obligations, requires a commercial bank, otherwise reporting its income on the cash basis, to report interest income on short-term loans made to borrowers in the ordinary course of business as it accrues.

*Id*. at 433. The Eighth Circuit, and the tax court in this case, held § 1281 does not apply in this situation. We exercise jurisdiction pursuant to 26 U.S.C. § 7482 and affirm.

BACKGROUND

Security State Bank (Security) is a commercial bank, as defined in Internal Revenue Code (I.R.C.) § 581, that uses the cash method of accounting to report its taxable income.[1] In the ordinary course of business, Security makes loans of varying duration, including loans documented by promissory notes with terms of one year or less.[2] Security made several such loans during the taxable year 1989,

---

[1] The parties fully stipulated the facts of this case. Therefore, our discussion borrows liberally from the language of the parties in the stipulation of facts filed with the tax court.

[2] Security has legitimate business reasons for making loans of one year or less. For instance, regulatory authorities prefer agricultural operating loans have short terms; the short terms allow Security to meet periodically with borrowers and review the status of their financial health; the short terms also allow Security to have better control over uncollectible debts and its interest rate risk.

the only year at issue in this case.

The parties labeled loans documented by a promissory note with a stated maturity date exactly one year from the date the loan was made as "Category X" loans. "Category Y" loans were evidenced by notes with a maturity date less than a year from the date the loan was made. The interest and principal owed on Categories X and Y loans was due at maturity. Because Security used the cash method of accounting, it reported interest income from these loans as it was received, not as it accrued. Therefore Security did not report $60,086.89 in accrued interest on the Category X loans and $65,687.11 in accrued interest on the Category Y loans as taxable income in tax year 1989.

The Internal Revenue Service determined Security was required to report the $125,774.00 in accrued interest from the Category X and Category Y loans as taxable income and issued a Notice of Deficiency alleging Security owed an additional $29,972.41 in taxes for 1989. Security filed a timely petition with the tax court, arguing the loans were not subject to the mandatory accrual rules of I.R.C. § 1281. Relying on its precedent in *Security Bank Minnesota v. Commissioner*, 98 T.C. 33 (1992), *aff'd*, 994 F.2d 432 (8th Cir. 1993), the tax court agreed with Security, holding I.R.C. § 1281 does not require a bank to

report accrued interest or original issue discount on short-term loans made in the ordinary course of business as taxable income. Having failed to convince the tax court to overrule its own precedent, the Commissioner now appeals and asks us to reject the rationale of the tax court and the Eighth Circuit.

DISCUSSION

We review tax court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." I.R.C. § 7482(a)(1). This appeal does not present factual questions, but solely questions of law, and therefore we review the tax court decision de novo. *See Love Box Co. v. Commissioner*, 842 F.2d 1213, 1215 (10th Cir.), *cert. denied*, 488 U.S. 820 (1988).

A. *Security Bank Minnesota v. Commissioner*

The facts of *Security Bank Minnesota* are analogous to this case. In *Security Bank Minnesota* a small commercial bank serving a rural, agricultural community, gained much of its business from providing operating loans to farmers. *Security Bank Minn.*, 994 F.2d at 433. Included in its loan portfolio were loans documented by notes with a maturity date falling on the first anniversary of the note, as well as loans with maturity dates of less than one year.

*Id*. The bank used the cash method of accounting, and therefore did not report interest income accrued, but not received, from these loans for tax purposes. *Id*. The Internal Revenue Service argued the bank was required to report the accrued interest as income, the bank petitioned the tax court, which held in the bank's favor, and the Commissioner subsequently appealed to the Eighth Circuit. *Id*. at 434.

The Eighth Circuit began its analysis with an exhaustive look at the text and background of § 1281. After holding the language of the statute was ambiguous, the court turned to the legislative history and determined "the primary scope and purpose of the legislation was to apply the discount accrual rules to cash basis taxpayers that purchased short-term discount obligations pursuant to a leveraged purchase arrangement." *Id*. at 439. The court concluded § 1281(a)(2) did not apply to banks making loans in the ordinary course of business. *Id*. at 441. We find the Eighth Circuit's reasoning persuasive, and apply it to our own analysis.

B. The Statute

The starting point in any case involving statutory construction is the language of the statute itself. When the terms of the statute are clear and unambiguous, that language is controlling absent rare and exceptional circumstances. When interpreting statutory language,

however, appellate courts must examine the disputed language in context, not in isolation. This [C]ourt must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.

*True Oil Co. v. Commissioner*, 170 F.3d 1294, 1299 (10th Cir. 1999) (quotation marks and citations omitted).

Section 1281 states, in relevant part:

Current inclusion in income of discount on certain short-term obligations

(a) General rule. – In the case of any short-term obligation to which this section applies, for purposes of this title –

(1) there shall be included in the gross income of the holder an amount equal to the sum of the daily portions of the acquisition discount for each day during the taxable year on which such holder held such obligation, and

(2) any interest payable on the obligation (other than interest taken into account in determining the amount of the acquisition discount) shall be included in gross income as it accrues.

(b) Short-term obligations to which section applies. –

(1) In general. – This section shall apply to any short-term obligation which –

....

(C) is held by a bank (as defined in section 581).

Section 1283 defines several important terms:

Definitions and special rules

(a) Definitions. – For purposes of this subpart –

(1) Short-term obligation. –

(A) In general. – Except as provided in subparagraph (B), the term "short- term obligation" means any bond, debenture, note, certificate, or other evidence of indebtedness which has a fixed maturity date not more than 1 year from the date of issue.

....

(2) Acquisition discount. – The term "acquisition discount" means the excess of –

(A) the stated redemption price at maturity (as defined in section 1273), over

(B) the taxpayer's basis for the obligation.

....

(c) Special rules for nongovernmental obligations. –

(1) In general. – In the case of any short-term obligation which is not a short-term Government obligation (as defined in section 1271(a)(3)(B)) –

(A) sections 1281 and 1282 shall be applied by taking into account original issue discount in lieu of acquisition discount, and

(B) appropriate adjustments shall be made in the application of subsection (b) of this section.

These sections are included in the statutory scheme found in Part V of Subchapter P, entitled "Special Rules for Bonds and Other Debt Instruments." *See* I.R.C. §§ 1271-1288. Part V is devoted to ensuring various types of discount are included as income. The titles of the subparts under Part V are evidence of this

focus: Subpart A is titled "Original Issue Discount"; Subpart B deals with "Market Discount on Bonds"; and Subpart C addresses "Discount on Short-term Obligations." *Id.*

The Commissioner argues the statutory language clearly and unambiguously applies to the short-term loan transactions at issue here. Section 1281 applies to "any short-term obligation which ... is held by a bank." I.R.C. § 1281 (b)(1)(C). A "short-term obligation" is "any ... note ... or other evidence of indebtedness which has a fixed maturity date not more than 1 year from the date of issue." I.R.C. § 1283 (a)(1)(A). Because Security is a bank which holds notes evidencing loans made to customers, and some of these loans were for durations of one year or less, the Commissioner argues § 1281 applies to these loans. While the simplicity of this argument is alluring, under closer scrutiny it loses its luster.

In order to adopt the Commissioner's argument, we must ignore the common language used throughout the Code in describing loan transactions, and we must examine the text of §§ 1281 and 1283 in a vacuum. We will not take this approach. The Commissioner correctly points out that, when examining the Internal Revenue Code, "[n]o inference, implication, or presumption of legislative construction shall be drawn or made by reason of the location or grouping of any

particular section or provision or portion of [the Code]." *See* I.R.C. § 7806(b).

However, the Supreme Court has noted:

> "the true meaning of a single section of a statute in a setting as complex as that of the revenue acts, however precise its language, cannot be ascertained if it be considered apart from related sections, or if the mind be isolated from the history of the income tax legislation of which it is an integral part."

*Commissioner v. Engle*, 464 U.S. 206, 223 (1984) (quoting *Helvering v. Morgan's Inc.*, 293 U.S. 121, 126 (1934)). When read in the context of the Code as a whole, we are convinced § 1281 is ambiguous as to whether or not the language covers loans made by banks in the ordinary course of business.

We reach this conclusion based not only on the terms used in the section, but also on the words Congress chose not to employ. As Security points out in its brief, the phrase used to define "short term obligation" for purposes of § 1281 – "any bond, debenture, note, certificate, or other evidence of indebtedness" – appears throughout the Code to describe investment activity.[3] In stark contrast, "when Congress wants to refer to lending transactions, it uses the terms 'loan' and 'made.'" *Security Bank Minn.*, 994 F.2d at 438 & n.7

---

[3] *See* I.R.C. §§ 165(g)(2)(C), 170(f)(5)(B), 171(d), 249(a), 279(b), 475(c)(2)(C), 503(e), 582(c)(1), 731(c)(3)(C)(i)(III), 811(b)(1), 834(d)(2), 988(c)(4), 1083(f), 1236(c), 1275(a)(1)(A), 1278(a)(3), 1286(e)(1), 1402(a)(2), 1563(f)(4)(C)(ii), 6049(d)(2), 6323(h)(4).

(listing thirty-three sections of the code using "loan" and "made" to describe lending transactions). Indeed, in § 279(c), Congress specifically distinguishes the business of "making loans" from purchasing or discounting. *See* I.R.C. § 279(c)(5) (defining the lending or finance business as "a business of making loans or purchasing or discounting accounts receivable, notes, or installment obligations."). "It is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning. Further, the Code must be given as great an internal symmetry and consistency as its words permit." *Commissioner v. Keystone Consol. Indus.*, 508 U.S. 152, 159 (1993) (quotation marks and citations omitted).

> Given that Congress generally refers to loans when considering the tax treatment of loans, and that Congress specifically distinguishes between making loans and purchasing notes, Congress' failure to use terms such as "loan" and "made" in § 1283(a)(1)(A) at least creates ambiguity as to whether the definition of short-term obligations for purposes of the discount accrual rules includes loans such as these.

*Security Bank Minn.*, 994 F.2d at 438.

We will not completely reproduce the Eighth Circuit's remaining analysis of the statutory language, other than to emphasize the further ambiguity created by the term "original issue discount." As stated earlier, § 1281 requires the accrual of the acquisition discount on certain short-term obligations. *See* I.R.C. § 1281(a)(1). Section 1283 states original issue discount must be substituted for

-10-

acquisition discount on nongovernmental obligations. *See* I.R.C. § 1283(c)(1)(A).

Original issue discount is "the excess (if any) of – the stated redemption price at

maturity, over the issue price." I.R.C. § 1273(a)(1). The stated redemption price

at maturity is "the amount fixed by the last modification of the purchase

agreement." *Id*. § 1273(a)(2). For our purposes here, the issue price is defined as

"the price paid by the first buyer." *Id*. § 1273(b)(2). Suffice it say these terms –

"purchase agreement," "price," and "buyer" – are not commonly used to describe

loan transactions between banks and their customers.[4]

The statutory language lends itself to at least two reasonable

interpretations. The language can be read to apply unconditionally to any and all

notes held by a bank, as the Commissioner advocates. The text can also be read

to cover only discounted short-term obligations. Therefore, we must conclude the

---

[4] The Commissioner counters by pointing to § 1272(a)(2)(E), which excepts small loans between natural persons not made in the ordinary course of business from the general rule of § 1272(a)(1) requiring the holder of a debt instrument to accrue original issue discount. The Commissioner opines there would be no reason to include this exception in the statute unless loans made in the ordinary course of business were subject to the original issue discount rules of §§ 1271-1275; and since these sections were enacted simultaneously with § 1281, loans made in the ordinary course of business must be included under the reach of § 1281. We reject this argument. The issue before us is whether the language of § 1281 is ambiguous, not whether loans made by banks in the ordinary course of business fall under § 1272. While the Commissioner's construction of the statute may be plausible, it does nothing to clear up the ambiguity outlined above.

language of § 1281 is ambiguous, and turn to legislative history to determine if Congress intended the section to apply to loans made in the ordinary course of business, or instead wanted to limit its application to transactions containing some form of discount.

Again, we agree with the Eighth Circuit and determine Congress did not intend to reach undiscounted loans made in the ordinary course of business when it passed § 1281. In reaching this result, we rely heavily on the well-reasoned analysis set forth in *Security Bank Minnesota*.

Section 1281, as originally enacted in 1984, did not explicitly mention the accrual of stated interest. *See* Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 41, 98 Stat. 494, 548. The current § 1281(a)(2), which does require accrual of stated interest, was added as a technical amendment in 1986. *See* Tax Reform Act of 1986, Pub. L. No. 99-514, § 1803(a)(8), 100 Stat. 2085, 2794. Therefore, we must examine the legislative history of both laws in order to glean congressional intent.

Before recounting the legislative history of these provisions, however, it may be useful to look at the law as it existed prior to enactment of Part V (I.R.C.

§§ 1271-1288).  Former § 1232A generally required the holder of an obligation issued at discount to accrue the original issue discount and include that amount as income.  *See* 26 U.S.C. § 1232A(a)(1) (1982) (repealed 1984).  However, short-term government obligations were specifically exempted from the general rule.  *Id*. § 1232A(a)(2)(C).  Treasury regulations extended this exemption to nongovernment short-term obligations.  *See* H.R. Rep. No. 98-432, at 1174 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 848 (citing Treas. Reg. § 1.1232-3(b)(1)(iii)).  Therefore, interest on indebtedness incurred to purchase short-term obligations eligible for the exemptions could be deducted in year one against unrelated income, creating the possibility of a one-year tax deferral.  *See id.*

We begin our legislative history analysis, as did the Eighth Circuit, by pointing to a hearing pamphlet prepared in anticipation of hearings before the House Committee on Ways and Means by the staff of the Joint Committee on Taxation.  *See* Staff of Joint Committee on Taxation, 98th Cong., Proposals Relating to Tax Shelters and Other Tax-Motivated Transactions (J. Comm. Print 1984).  Discussing the tax shelter § 1281 was ultimately drafted to eliminate, the authors of the pamphlet expressed concern about year-end transactions where "[t]axpayers who make leveraged purchases of obligations ... are able to defer tax liability on unrelated ordinary income."  *Id*. at 93.  To address this concern, the

pamphlet proposed alternative solutions: interest incurred to purchase or carry short-term discount obligations would not be deductible until the interest paid on the obligations was included in the investor's income; or "taxpayers could be required to accrue discount on these securities when they are debt-financed. Either of these proposals would deal with *leveraged purchases of short-term discount obligations*." *Id.* at 94 (emphasis added). The House Report echoed these concerns, focusing on the deferral of tax liability allowed by existing law and the propensity of taxpayers to make "leveraged purchases of obligations eligible for the special rule at year-end to achieve tax deferral." H.R. Rep. No. 98-432, at 1174 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 848.

These themes were a common thread throughout the various congressional reports prepared in conjunction with the legislation. *See Security Bank Minn.*, 994 F.2d at 439. Clearly, "the legislative history of § 1281 as initially enacted demonstrates Congress was concerned with reducing abuses surrounding the special rules allowing deferral of discount. Nothing in the legislative history shows an intention to deal with problems surrounding obligations carrying only stated interest." *Id.* We determine § 1281, as originally passed, did not reach undiscounted obligations.

We see nothing in the enactment of § 1281(a)(2) in 1986 that changed the focus of the original section. The House and Senate committees described the change in identical terms:

> The bill clarifies that taxpayers subject to the rule for mandatory accrual are required to include in income for a taxable year all amounts of interest allocable to that year with respect to short-term obligations, irrespective of whether the interest is stated or is in the form of acquisition discount or [original issue discount], and irrespective of when any stated interest is paid. For example, a calendar-year taxpayer designated in section 1281(b) holds an obligation from the time it is issued on October 1, 1985 until its maturity on October 1, 1986. Under the bill, the taxpayer is required to include in income for 1985 the equivalent of three months interest on the obligation, regardless of whether the interest income is in the form of acquisition discount, [original issue discount], stated interest, or any combination thereof.

H.R. Rep. No. 99-426, at 886 (1985); S. Rep. No. 99-313, at 903 (1986). The Commissioner emphasizes the "regardless of whether the interest income is in the form of acquisition discount, original issue discount, stated interest, or any combination thereof" language as evidence § 1281 required the accrual of stated interest for undiscounted bank loans from its inception. However, the first sentence in the report makes it clear the accrual of stated interest only applies to taxpayers already subject to the rule for mandatory accrual. The Commissioner admits the addition of § 1282(a)(2) was merely a technical correction, and in no way was intended to increase the categories of obligations to which § 1281 applied. For the reasons stated *supra*, we have already determined § 1281 did not

reach the loans at issue here. Therefore, we "conclude that the addition of §
1281(a)(2) merely required taxpayers already subject to the mandatory accrual
rules (those who purchased discounted short-term obligations) to accrue any
stated interest on those obligations." *Security Bank Minn.*, 994 F.2d at 440.

The language of the statute itself buttresses our conclusion. Section
1281(a)(1) requires inclusion of "the" acquisition discount in gross income, while
§ 1281(a)(2) applies to "any" interest payable, except interest already included in
"the" acquisition discount. "Use of the definite article 'the' suggests to us that
any obligation subject to § 1281(a)(2) would be an obligation containing
discount." *Security Bank Minn.*, 994 F.2d at 438. In other words, § 1281 can
reach obligations containing discount and no stated interest, but it does not apply
to obligations with stated interest and no discount.[5]

After a thorough review of the relevant statutes, legislative history, case

---

[5] While in no way conceding ours is the proper interpretation, the
Commissioner argues this point is irrelevant for the present case because the
interest owed by Security's customers is actually original issue discount. We
reject this clever argument. Whether the interest falls within the confines of §
1281(a)(1) or (a)(2) is immaterial because we have determined, as did the Eighth
Circuit, that § 1281 does not apply to banks making loans in the ordinary course
of business. This statute is geared toward the purchase of investment vehicles,
not the making of loans.

law, and the arguments of the parties,[6] we adopt the holding of the Eighth Circuit in *Security Bank Minnesota*.  The mandatory accrual rules of § 1281 do not apply to bank loans made in the ordinary course of business.  We **AFFIRM**.

---

[6] Because we hold § 1281 does not apply to bank loans made in the ordinary course of business, we do not reach the parties' arguments pertaining to whether the obligations at issue in this case are "short-term obligations" within the meaning of § 1283(a)(1).