T.C. Memo. 1998-381


UNITED STATES TAX COURT


U.S. BANCORP, SUCCESSOR IN INTEREST TO WEST ONE
BANCORP AND SUBSIDIARIES, FORMERLY KNOWN AS MOORE
FINANCIAL GROUP, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6544-97.[1]                Filed October 22, 1998.


David W. Brown and Richard A. Edwards, for petitioner.

William P. Boulet, Jr. and James R. Robb, for respondent.

---

[1] On Nov. 18, 1997, the Court granted petitioner's motion to consolidate this case with the case at docket No. 27342-96. Because the issue herein is not related to the issues in docket No. 27342-96 and does not involve the tax years at issue in docket No. 27342-96, the order pursuant to this opinion will be issued only in docket No. 6544-97. Also for this reason, the Court, by order dated Sept. 15, 1998, has denied petitioner's motion for partial summary judgment, as supplemented, and respondent's cross-motion for partial summary judgment on the interest on short-term receivables issue in the case at docket No. 27342-96.

MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  This matter is before the Court on petitioner's motion for partial summary judgment, as supplemented (petitioner's motion), and respondent's cross-motion for partial summary judgment under Rule 121.[2]  Petitioner's principal place of business was at Portland, Oregon, when it filed its petition.

Relying on <u>Security Bank Minn. v. Commissioner</u>, 98 T.C. 33 (1992), affd. 994 F.2d 432 (8th Cir. 1993), petitioner has moved for an order that Idaho First National Bank (IFNB), a commercial bank using the cash method of accounting during 1986, the first taxable year in issue, is not required by section 1281(a) to include in its 1986 gross income interest on short-term obligations (maturing in 1 year or less) that had accrued in 1986 but was not received until 1987.[3]  Petitioner concedes that, if and to the extent we grant petitioner's motion, the interest income in question is properly included in full in petitioner's

---

[2] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue (1986-88), unless otherwise specified.

[3] For the purposes of the motion, petitioner has conceded that 12-month commercial and agricultural loans that are regularly renewed or rolled over are "short-term" obligations. Although petitioner's motion states that it does not concede the point for all purposes, our disposition of the question on such loans has mooted the point.

1987 gross income.[4] Respondent's cross-motion asks for an order denying petitioner's motion in full and granting partial summary judgment for respondent. Subsequent to the submissions of the parties, we followed and applied Security Bank Minn. v. Commissioner, supra, in Security State Bank v. Commissioner, 111 T.C. 210 (1998).

With respect to IFNB's consumer, commercial, and agricultural short-term loans made to its customers, we follow our decisions in Security Bank Minn. v. Commissioner, supra, and Security State Bank v. Commissioner, supra, hold for petitioner, grant petitioner's motion, and deny respondent's motion. By reason of petitioner's concession, the interest that accrued on such loans in 1986 is included in petitioner's income in full in 1987.

With respect to the certificates of deposit (CD's) and time deposits owned by IFNB in 1986, we deny petitioner's motion and respondent's cross-motion. Respondent's arguments with respect to the CD's and time deposits raise questions of fact regarding banking and commercial practices. These questions must be

---

[4] Petitioner has conceded that it is not entitled to its reporting position that the interest in issue that was received in 1987 should be spread ratably over the 4 years 1987-90 as a sec. 481 change in accounting method adjustment under sec. 448(d)(7), as enacted by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 801(a), 100 Stat. 2347 (TRA 1986). Sec. 448 requires C corporations having average annual gross receipts of more than $5 million to switch to the accrual method of accounting for 1987 and later years.

resolved by a trial or obviated by agreement of the parties, before we can decide whether the rule of law we first expressed in Security Bank Minn. v. Commissioner, supra, and recently applied in Security State Bank v. Commissioner, supra, applies to the CD's and time deposits.

The background facts set forth below are derived from the pleadings in this case, petitioner's request for admission, respondent's responses to petitioner's request, the affidavit and exhibits attached to petitioner's motion for partial summary judgment and the supplement to petitioner's motion, respondent's cross-motion for partial summary judgment, the declaration and exhibits attached to respondent's response to petitioner's motion, the exhibits attached to petitioner's reply to respondent's response, and petitioner's supplemental reply and affidavit attached thereto. The background facts are set forth solely for the purpose of deciding the motions and are not findings of fact for this case. Fed. R. Civ. P. 52(a); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

Factual Background

Petitioner is a successor in interest by merger to West One Bancorp, formerly known as Moore Financial Group, Inc. (Moore Financial), a national bank holding company incorporated in Idaho

in 1981. During the years in issue, 1986 through 1988, Moore Financial was the parent corporation of IFNB.[5]

In 1986, IFNB was a "bank", as defined in section 581, that was entitled to and did use the cash method of accounting for Federal income tax purposes.[6]

Also during 1986, IFNB was the largest commercial and agricultural lender in Idaho. As a large commercial bank, IFNB made numerous loans of different maturities in the ordinary course of its business, including loans of less than 1 year, 1-year loans, and loans of more than 1 year.

The short-term obligations in issue here all had periods to maturity of 1 year or less and consisted of the following:

| Description | Principal Balances | Accrued Interest as of 12/31/86 |
|---|---|---|
| Time deposits with banks | [1]$164,000,000 | [1]$970,214 |
| CD's with banks | [2]43,000,000 | [2]2,373,410 |
| Consumer loans | 16,626,503 | 381,325 |
| Commercial and agricultural loans | [3]356,888,213 | [3]6,092,248 |
| Total | [4]580,514,716 | [4]9,817,197 |

---

[5] After the years at issue (in 1989) Moore Financial changed its name to West One Bancorp (West One). In 1995, West One merged into U.S. Bancorp (Old Bancorp). In 1997, Old Bancorp merged into First Bank System, Inc., a bank holding company, which changed its name to U.S. Bancorp (the petitioner in this case).

[6] IFNB switched to the accrual method of accounting for 1987, as required by sec. 448, enacted by TRA 1986. See supra note 4.

- 6 -

[1] The time deposits with banks had stated maturities of less than 180 days, and often less than 61 days.  All the time deposits were in exact multiples of $1 million, and the majority of the obligors were foreign banks.  Petitioner's records showed the CD's as having originated from the following foreign centers: The Cayman Islands, Nassau, Toronto, Zurich, London, and Frankfurt.

[2] The CD's with banks had stated maturities of 9 months to 1 year.  All the CD's were in exact multiples of $1 million, and the majority of the obligors were foreign banks.  Each CD was denominated either "Yankee" or "Euro".

[3] The amounts agreed upon by the parties with respect to loans have been adjusted to remove all amounts in respect of obligations of local governments.

[4] The total amounts of interest included in the accruals include loans due and payable in 1986 on which principal and interest remained unpaid at yearend.

None of the short-term obligations held by IFNB at yearend 1986 had been previously issued and then acquired by IFNB from third parties (i.e., from parties other than the borrower, debtor, or obligor).  The only obligations acquired by IFNB from third parties were long-term corporate bonds and U.S. Government securities, none of which are in issue in this matter.

Petitioner supports its assertion that IFNB originated the short-term obligations at issue here in the ordinary course of its banking business, by stating that IFNB relied upon the borrower's good faith and credit--along with any collateral used to secure the loan--to repay the resulting obligation.  Although (as discussed below) respondent asserts that the time deposits

and CD's owned by IFNB are different from ordinary bank loans,[7] respondent does not contest petitioner's assertion that the time deposits (and impliedly, the CD's) arise in the ordinary course of business, as a customary method used by banks to earn interest on surplus funds.

Discussion

I.   Whether Summary Judgment Is Appropriate

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).

Summary judgment is appropriate where there is no genuine issue of material fact and decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C.

---

[7] There are factual differences between petitioner's consumer, commercial, and agricultural loans and its time deposits and CD's with banks.  The consumer, commercial, and agricultural loans provided for periodic payments of interest, monthly in most cases, quarterly in a few; as a result, the accrued but unpaid interest with respect to such loans held at Dec. 31, 1986, amounted on the average to approximately 1 month's worth of interest on each loan.  The CD's with banks provided for the payment of interest only at maturity; as a result, the amount of the accrual with respect to each such instrument was relatively larger.  As evidenced by the schedule, supra p. 5, at 1986 yearend, the remaining accrual period on the CD's, which bore interest at rates ranging from 7.07 percent to 8.10 percent per year, was, on the average, closer to 6 months than to 1 month.  Although the time deposits with banks also provided for one payment of interest at maturity, the remaining average accrual period on the time deposits was relatively much shorter than for the CD's because of the shorter average period to maturity of the time deposits.

at 520; Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). In deciding whether to grant summary judgment, the Court must consider the factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Bond v. Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). If the conditions of summary judgment are otherwise satisfied with respect to a single issue or fewer than all the issues in a case, then partial summary judgment may be granted, even though all the issues in the case are not disposed of. Rule 121(b); Naftel v. Commissioner, supra. However, summary judgment is not a "short cut" to avoid trial or a substitute for trial. Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572 (2d Cir. 1969). As stated in Cox v. American Fidelity & Cas. Co., 249 F.2d 616, 618 (9th Cir. 1957), "When confronted with a motion for summary judgment, the trial judge must determine if there are any material factual issues that should be resolved before the trier of fact. It is not the trial judge's function * * * to resolve those issues or to weigh evidence." Finally, summary judgment should be used sparingly and with caution. Bayou Bottling, Inc. v. Dr. Pepper Co., 543 F. Supp. 1255 (W.D. La. 1982), affd. 725 F.2d 300 (5th Cir. 1984).

II.  The Legal Background and The Parties' Arguments

The parties agree that the controlling statutory provisions are sections 1281 and 1283, which require the accrual of discount

on certain "short-term obligations" (the short-term obligation
rules).[8]

Briefly, if the short-term obligation rules apply to a
"nongovernmental" short-term obligation, the following results
obtain, for any taxable year.[9]  First, under sections 1281(a)(1)

---

[8] These provisions were added to the Code in 1984, by the
Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec.
41(a), 98 Stat. 548.  The provisions were amended in 1986, by
sec. 1803(a)(8) of TRA 1986, 100 Stat. 2794.

[9] Sec. 1281(a) provides as follows:

SEC. 1281.   CURRENT INCLUSION IN INCOME OF DISCOUNT ON
             CERTAIN SHORT-TERM OBLIGATIONS.

(a) General Rule.--In the case of any short-term
obligation to which this section applies, for purposes
of this title--

(1)  there shall be included in the gross
income of the holder an amount equal to the sum of
the daily portions of the acquisition discount for
each day during the taxable year on which such
holder held such obligation, and

(2)  any interest payable on the
obligation (other than interest taken into
account in determining the amount of the
acquisition discount) shall be included in
gross income as it accrues.

Sec. 1283(c) provides in part:

SEC. 1283(c).  Special Rules for Nongovernmental
Obligations.--

(1)  In general.--In the case of any short-
term obligation which is not a short-term
Government obligation * * * --

(continued...)

and 1283(c), the holder of the obligation is required to include any "original issue discount" (OID) that accrues while it holds the obligation during the taxable year, in its interest income for that year. Second, under section 1281(a)(2), the holder is required to include any interest payable on that obligation in income as it accrues.

In Security Bank Minn. v. Commissioner, supra, we considered the application of the short-term obligation rules to certain loans made by a bank. After a thorough consideration of the statutory language, the relevant legislative history, and the arguments of the parties, we concluded that the short-term obligation rules did not require the petitioning bank "to accrue interest on the short-term loans made to customers in the ordinary course of its business." Security Bank Minn. v. Commissioner, 98 T.C. at 43.

Petitioner asserts that the short-term obligations at issue in this case are indistinguishable from the obligations we considered in Security Bank Minn. v. Commissioner, supra. As a result, argues petitioner, under the principle of stare decisis, we must hold that the short-term obligation rules do not require

---

⁹(...continued)
                    (A) sections 1281 and 1282 shall be
            applied by taking into account
            original issue discount in lieu of
            acquisition discount * * *

the accrual of interest--or the accrual of any interest substitute such as OID--on the loans and other assets at issue in this case.

Respondent, on the other hand, advances three arguments to support the determination that the short-term obligation rules do apply.

First, respondent asserts that our decision in <u>Security Bank Minn. v. Commissioner</u>, <u>supra</u>, was wrong and that we should overrule it in this case.

Second, respondent asserts that the obligations in this case were issued with OID--an assertion respondent expressly declined to make with respect to the loans at issue in <u>Security Bank Minn. v. Commissioner</u>, <u>supra</u>. Respondent argues that because the Court, in <u>Security Bank Minn.</u>, therefore assumed that the loans at issue were not discount loans, this distinction compels (or at least permits) a different tax result in this case from the result we decided on in <u>Security Bank Minn</u>, with respect to the assertedly nondiscount loans there at issue.

Third and finally, respondent asserts that the time deposits and CD's at issue in this case are different, in legally significant respects other than their "discount" status, from the bank loans at issue in <u>Security Bank Minn. v. Commissioner</u>, <u>supra</u>--and that this difference compels a different tax result with respect to the time deposits and CD's.

We consider respondent's arguments seriatim.  In so doing, we explain why summary judgment is appropriate with respect to IFNB's consumer, commercial, and agricultural loans but is not appropriate with respect to its time deposits and CD's.

III.  Respondent's First Argument:  Security Bank Minn. v. Commissioner Should Be Overruled

Respondent first asks the Court to reconsider its holding in Security Bank Minn. v. Commissioner, supra, that section 1281(a)(2) of the short-term obligation rules does not require a bank "to accrue interest on the short-term loans made to customers in the ordinary course of its business."  Security Bank Minn. v. Commissioner, 98 T.C. at 43.  In short, respondent here argues, as in Security Bank Minn., that section 1281(a)(2) requires the accrual of interest on all short-term obligations held by a bank--without regard to the type of obligations involved, or the manner in which the bank came to hold them.

Although respondent advances this argument with force and cogency--and also tries to identify certain factual differences between the loans at issue in this case and the loans considered in Security Bank Minn. v. Commissioner, supra--we believe that all respondent has done in advancing this argument is to ask us to overrule Security Bank Minn., which we decline to do.[10]

_____

[10] For example, we note that most of IFNB's consumer, commercial, and agricultural loans provided for payments of interest at monthly intervals, as well as at maturity, while the
(continued...)

Respondent has not brought to our attention any "prudential and pragmatic considerations", see Planned Parenthood v. Casey, 505 U.S. 833, 854 (1992), that would lead us to conclude that the principle of stare decisis should not hold sway.[11]  See also Helvering v. Hallock, 309 U.S. 106, 119 (1940).

As we stated in Security State Bank v. Commissioner, 111 T.C. at 213-214:

> Security Bank Minn. v. Commissioner [citation omitted] was a Court-reviewed opinion.  The majority opinion contains an extensive analysis of the statute, its evolution, the context in which it appears, and its legislative history.  There was a dissenting opinion which was joined by five Judges.  In affirming our

_____

[10](...continued)
agricultural loans at issue in Security Bank. Minn. v. Commissioner, 98 T.C. 33 (1992), affd. 994 F.2d 432 (8th Cir. 1993) (and in Security State Bank v. Commissioner, 111 T.C. 210 (1998)), provided for payments of interest as well as principal only at maturity.  Even though respondent's arguments in Security Bank Minn. arguably are more directly applicable to the loans to customers in the case at hand than they were to the loans in Security Bank Minn. and Security State Bank--after all, the reference to "any interest payable on the obligation" would seem to apply directly to the interest payable monthly and quarterly in the case at hand, as opposed to the interest payable at maturity in Security Bank Minn. and Security State Bank, which seems more like OID--this does not change our conclusion that all respondent has done in mounting his primary argument is to ask us to overrule Security Bank Minn., as stated in the text.

[11] Indeed, those considerations point in the other direction.  The issues in this case have limited significance in subsequent years because of the enactment of sec. 448, requiring C corporations, including large banks such as IFNB, with average annual gross receipts of more than $5 million, to switch to the accrual method of accounting, effective for 1987 and subsequent years.  Petitioner observes that our ruling in this matter will not apply to petitioner for any other tax year and is not likely to apply to any other large commercial bank.

opinion, the Court of Appeals for the Eighth Circuit also made an extensive analysis of the same factors. One of the judges on the Court of Appeals panel dissented.

No purpose would be served by repeating the statutory analysis that lead this Court and the Court of Appeals to decide that section 1281(a)(2) does not apply to loans made by banks in the ordinary course of business. Suffice it to say that this matter has been thoroughly considered and decided. The doctrine of stare decisis generally requires that we follow the holding of a previously decided case, absent special justification. This doctrine is of particular importance when the antecedent case involves statutory construction. Hesselink v. Commissioner, 97 T.C. 94, 99-100 (1991). While respondent has skillfully rearticulated his arguments in support of a different interpretation of the statute, we find nothing therein that would cause us to refrain from applying the doctrine of stare decisis with respect to the section 1281(a)(2) issue. [Fn. ref. omitted.]

We agree, and decline to overrule Security Bank Minn. v. Commissioner, supra, with respect to this issue. Accordingly, we hold that section 1281(a)(2), as interpreted by Security Bank Minn. and applied in Security State Bank v. Commissioner, supra, does not require the accrual of interest with respect to the short-term consumer, commercial, and agricultural loans made by IFNB to its customers.

IV. Respondent's Second Argument: Section 1281(a)(1) and OID

Respondent argues in the alternative that, even if we follow Security Bank Minn. v. Commissioner, supra, the short-term obligation rules should still be applied to IFNB's loans, CD's, and time deposits, for the following reason. Respondent asserts in this case that IFNB's loans and deposits were issued by the

obligors with OID.  By contrast, in <u>Security Bank Minn.</u>, the Commissioner deliberately decided <u>not</u> to assert that the relevant bank loans had OID.  <u>Security Bank Minn. v. Commissioner</u>, 98 T.C. at 37-38.  Respondent argues that this distinction is important, because the Court in <u>Security Bank Minn.</u> assumed in reaching its decision that the bank loans there in question were not "discount" obligations.

As a result, argues respondent, our decision in <u>Security Bank Minn. v. Commissioner</u>, <u>supra</u>, does not determine the outcome of this case.  Although <u>Security Bank Minn.</u> may prevent the accrual of <u>interest</u>, under section 1281(a)(2) of the short-term obligation rules, it does not, in respondent's view, prevent the accrual of <u>discount</u>, under section 1281(a)(1) of those rules.[12] Therefore, concludes respondent, accrual is appropriate with respect to the loans and deposits held by IFNB in this case.

In response to this argument, we note that there is language in <u>Security Bank Minn. v. Commissioner</u>, <u>supra</u>, that could be read to suggest that the Court believed the bank loans there at issue had no discount, and that this belief was important to the result.[13]  Notwithstanding this language, however, we believe the

_____

[12] These Code provisions are discussed <u>supra</u> pp. 8-9.

[13] As we stated in <u>Security Bank Minn. v. Commissioner</u>, <u>supra</u>:

As we have noted [citation omitted], the common
(continued...)

Court in <u>Security Bank Minn.</u> was aware that the loans might, in respondent's view, have been issued with OID, for the following reasons.

First, although it is true that respondent, in <u>Security Bank Minn. v. Commissioner</u>, <u>supra</u>, did not take the position that the bank loans there at issue had OID, this is not the "whole truth". In the very next breath, respondent then told the Court that those bank loans "arguably did" have OID--notwithstanding the previous disclaimer. <u>Security Bank Minn. v. Commissioner</u>, 98 T.C. at 37-38.

Second, under respondent's 1986 proposed regulations interpreting the OID rules,[14] <u>all</u> short-term obligations would be

_____

[13](...continued)
thread of the sections included in Part V * * * [of Subchapter P of Chapter 1 of the Code, which Part contains the original issue discount (OID), market discount, and discount on short-term obligation rules] is that amounts defined as discount are to be taken into account as ordinary income in some appropriate manner. Thus the obligations or instruments to which Part V applies are obligations or instruments that involve some sort of discount--in the case of section 1281, acquisition discount (or, by operation of section 1283(c)(1)(A), original issue discount). <u>There is no indication that any of the loans here in dispute involve discount</u> * * *. [<u>Security Bank Minn. v. Commissioner</u>, 98 T.C. at 41-42; emphasis added.]

[14] Secs. 1.1271-1 through 1.1275-5, Proposed Income Tax Regs., 51 Fed. Reg. 12048-12096 (Apr. 8, 1986) (the 1986 Proposed Regs.).

considered to be issued with OID.[15]  We note that final regulations were not published until 1994 and are generally not applicable to debt instruments issued before April 4, 1994.[16]  In addition, this Court usually regards proposed regulations as having no more weight than a position asserted in a brief by the Commissioner.[17]  However, the portion of respondent's brief cited by the majority in Security Bank Minn. v. Commissioner, supra, did refer to the proposed regulations.  Security Bank Minn. v. Commissioner, 98 T.C. at 37-38.  For this reason, we believe that

---

[15] Sec. 1273(a)(1) defines the amount of OID an obligation contains to be equal to the excess of the obligation's "stated redemption price at maturity" (SRPM) over the obligation's "issue price".  Under sec. 1.1273-1, Proposed Income Tax Regs., 51 Fed. Reg. 12059-12061 (Apr. 8, 1986), the SRPM of an obligation was in turn defined to be equal to the sum of all payments to be made under the terms of that obligation, other than "qualified periodic interest payments".  In addition, sec. 1.1273-1(b)(1)(ii)(D), Proposed Income Tax Regs., 51 Fed. Reg. 12060 (Apr. 8, 1986), provided that in the case of short-term obligations, no interest payments were considered to constitute "qualified periodic interest payments".

What all this means is that under the 1986 Proposed Regs., all interest payments on a short-term obligation would be included in the obligation's SRPM, and would therefore constitute OID.

[16] Sec. 1.1271-0(a), Income Tax Regs.  It does not appear that the final regulations made any substantive changes to the 1986 Proposed Regs.' definition of OID as discussed in the text.  See sec. 1.1273-1(b), 1.1273-1(c)(5), Income Tax Regs.

[17] For examples of opinions so characterizing proposed regulations, see Laglia v. Commissioner, 88 T.C. 894, 897-898 (1987); F.W. Woolworth Co. v. Commissioner, 54 T.C. 1233, 1265-1266 (1970).

the Court in <u>Security Bank Minn.</u> was aware of respondent's view that short-term obligations were generally issued with OID.

As a result, we were inclined to disregard respondent's argument that the asserted presence of OID in this case requires a result different from that decided in <u>Security Bank Minn.</u>, even before we had considered the effect of our recently released decision in <u>Security State Bank v. Commissioner</u>, <u>supra</u>.[18]

Subsequent to the parties' submissions in this case, in our decision in <u>Security State Bank v. Commissioner</u>, <u>supra</u>, we explained certain aspects of our decision in <u>Security Bank Minn. v. Commissioner</u>, <u>supra</u>. In <u>Security State Bank</u>, respondent made essentially the same alternative argument; i.e., that notwithstanding our decision with respect to the accrual of <u>interest</u> in <u>Security Bank Minn.</u> (under section 1281(a)(2)), section 1281(a)(1) requires accrual of OID on short-term bank loans.

In response to this argument, in <u>Security State Bank v. Commissioner</u>, <u>supra</u>, we stated that, because it had not been necessary for us to make a specific holding regarding the application of section 1281(a)(1) in <u>Security Bank Minn. v. Commissioner</u>, <u>supra</u>, it could be said "in a technical sense" that

---

[18] For a contemporaneous critical view of respondent's alternative argument based upon the 1986 Proposed Regs., see Lokken, "The Time Value of Money Rules", 42 Tax L. Rev. 1, 40 n.100 (1986).

respondent's proposed application of section 1281(a)(1) presented an issue of first impression in Security State Bank v. Commissioner, 111 T.C. at 214. However, after examining our approach in Security Bank Minn., we concluded in Security State Bank v. Commissioner, supra, that:

> Our analysis in Security Bank Minn. v. Commissioner, supra, makes clear that we have interpreted section 1281 as having no application to loans made by banks in the ordinary course of business, regardless of whether the loans are characterized as generating interest or original issue discount. We, therefore, hold that section 1281(a)(1) does not apply to the loans in issue. [Id. at 215; fn. ref. omitted.]

In the case at hand, we follow Security Bank Minn. v. Commissioner, supra, as explained by Security State Bank v. Commissioner, supra, to hold that no accrual is required under section 1281(a)(1) with respect to IFNB's consumer, commercial, and agricultural short-term loans to its customers.

V. Respondent's Third Argument: IFNB's Time Deposits and CD's Are Not "Bank Loans Made to Customers"

As an alternative to the foregoing arguments, which relate to all the short-term obligations held by IFNB during the years at issue, respondent makes a third argument, which applies only to IFNB's time deposits and CD's, the obligors of which were other banks.

In essence, respondent asserts that even if Security Bank Minn. v. Commissioner, supra, and Security State Bank v. Commissioner, supra, were properly decided, the legal standard we

announced in those cases does not apply to the time deposits and CD's in this case.

According to respondent, our precise holding in Security Bank Minn. v. Commissioner, supra, was that section 1281 does not apply with respect to short-term loans made by a bank to its customers in the ordinary course of its business. Respondent asserts that IFNB's time deposits and CD's do not constitute "loans made to customers", as that term was employed by Security Bank Minn. (and Security State Bank v. Commissioner, supra). Therefore, argues respondent, our holdings in those cases do not apply to IFNB's short-term time deposits and CD's, even if we decide that the holdings do apply to IFNB's loans (as we have done). As a result, concludes respondent, the short-term obligation rules can be applied to IFNB's short-term time deposits and CD's, without violating either the spirit or the letter of Security Bank Minn. (or Security State Bank).

In support of this argument, respondent notes that the Court in Security Bank Minn. v. Commissioner, supra, considered in some detail the meanings of the words "acquire" and "issue" (including variants thereof). This consideration, of course, was quite appropriate, because the short-term obligation rules apply to acquisition discount or original issue discount, depending on the type of obligation involved.

In examining the plain language of the statute, the Court in Security Bank Minn. v. Commissioner, supra, stated:

> In the Code and in normal bank parlance, terms such as acquisition and issue commonly refer to third-party debt instruments; "loans" are "made" by a bank to its customers. * * * The terms "loan" and "made" are noticeably absent from the definition of short-term obligations in section 1283(a)(1)(A). [Security Bank Minn. v. Commissioner, 98 T.C. at 39.]

Similarly, in evaluating the legislative record, the Court in Security Bank Minn. noted that: "all of the available material [in the legislative history] is expressed in terms relating to purchased or acquired instruments, not expressly to loans made." Id. at 41.

Against this background, respondent asserts that time deposits and CD's are "purchased" or "acquired" from other banks, within the common meaning of those words, and within the meaning developed by the Court in Security Bank Minn. v. Commissioner, supra. Respondent additionally asserts that the obligor banks on such deposits and CD's are not "customers" of the bank that owns the deposits and CD's, once again within both the common meaning of the term and the meaning developed in Security Bank Minn. v. Commissioner, supra.

We believe that whether, as a matter of law, respondent's argument is correct depends, at least in part, on the answers to a number of factual questions concerning the nature of time deposits and CD's. For example, before we could rule on

respondent's motion with respect to this issue, we believe we would need to know how time deposits and CD's are regarded in banking and commercial practice--and how, in that practice, they are considered to differ (if at all) from "bank loans made to customers".  Or, to put it another way, we would need to know whether bankers consider time deposits and CD's to be "acquired" or "issued", in a sense in which bank loans are not.

In addition, we would need to know whether time deposits and CD's are considered to be "investments" similar to third-party commercial paper, while "loans" are considered to be noninvestment "business done with customers".  In this regard, it would be helpful to know how the documentation evidencing--or perhaps constituting--time deposits and CD's, differs from the standard bank loan agreement or promissory note.[19]

In short, we believe that a number of factual questions should be answered, before we could properly answer the legal question raised by respondent's third argument:  Whether our holdings in Security Bank Minn. v. Commissioner, supra, and Security State Bank v. Commissioner, supra--that Congress did not intend sections 1281 and 1283 to apply to loans made by banks to

---

[19] Other possible questions concern the importance of the facts that the time deposits and CD's held by IFNB were in exact multiples of $1 million, and that the majority of the obligors were large foreign banks, both of which are factors that would tend to make the time deposits and CD's much more liquid than a typical bank loan.

their customers--apply to the time deposits and CD's that are also at issue in this case.

The materials submitted by the parties with respect to their motions for summary judgment do not permit us to answer those factual questions. As a result, there are genuine issues of material fact that must be resolved by a trial, or be obviated by agreement of the parties, before we can decide whether the rule of law we first expressed in Security Bank Minn. v. Commissioner, supra, and recently applied in Security State Bank v. Commissioner, supra, applies to the CD's and time deposits held by the petitioner. Therefore, we hold that summary judgment is not appropriate with respect to the treatment of the CD's and time deposits held by IFNB.[20]

---

[20] The fact that both parties have moved for summary judgment does not require the Court to decide that there are no genuine issues of material fact, or that summary judgment is appropriate. Under Rule 121(b), summary judgment shall be rendered "if the pleadings * * * and any other acceptable materials * * * show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." The burden of proving that there is no issue of material fact is on the moving party; and in deciding whether to grant summary judgment, the Court must view the factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Bond v. Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). In addition, where both parties have moved for summary judgment, each party's motion must be considered independently, to determine whether that party has met its burden of proof. Take v. Commissioner, 82 T.C. 630, 633 (1984), affd. 804 F.2d 553 (9th Cir. 1986); Abramo v. Commissioner, 78 T.C. 154, 162-163 (1982).

This Court has often found that issues of material fact
(continued...)

VI. <u>Holdings</u>

For all the reasons set forth above, we reject respondent's arguments, apply stare decisis, follow <u>Security Bank Minn. v. Commissioner</u>, <u>supra</u>, and <u>Security State Bank v. Commissioner</u>, <u>supra</u>, and hold that section 1281(a) does not apply to IFNB's short-term consumer, commercial, and agricultural loans made to its customers.  However, we hold that genuine issues of material fact exist--which issues must be resolved by a trial or obviated by agreement of the parties--before the proper tax treatment of

_____

[20](...continued)
exist--and has declined to grant summary judgment for either party--where cross-motions have been made.  See <u>Estate of Wilbanks v. Commissioner</u>, 94 T.C. 306, 315-316 (1990); <u>Krause v. Commissioner</u>, 92 T.C. 1003, 1026-27 (1989); <u>Take v. Commissioner</u>, <u>supra</u>; <u>Burford v. Commissioner</u>, T.C. Memo. 1984-466.

The same approach has been used by courts deciding cross-motions for summary judgment under the analogous Federal rule, Fed. R. Civ. P. 56.  As has been stated by one of the leading treatises on Federal civil procedure:

> When litigants concurrently pursue summary judgment, the first impression of the uninitiated is often that at least one party inevitably will be victorious and obtain summary judgment.  However, this seemingly intuitive impression is incorrect.  * * * Each individual summary judgment motion must be evaluated independently to determine whether there exists a genuine dispute of material fact and whether movant is entitled to judgment as a matter of law.  [11 Moore's Federal Practice sec. 56.10[6] (3d ed. 1998) at 56-57; fn. ref. omitted.]

See also 10A Wright et al., Federal Practice & Procedure:  Civil sec. 2720 (3d ed. 1998), and the cases cited therein.

the CD's and time deposits held by IFNB can be decided. Accordingly, we hold that the portions of both parties' motions relating to the time deposits and CD's cannot be decided as a matter of law and are therefore not ripe for summary judgment. See Rule 121.

To reflect the foregoing,

An order will be issued granting in part and denying in part petitioner's motion for partial summary judgment, as supplemented, and denying respondent's cross-motion for partial summary judgment.